TRUSTEES INTERNAL IMPROVEMENT FUND *et al.*, *Appellants*, v. CHARLES H. ROOT, *Appellee*.

1.  By treaty of February 22nd, 1819, the Kingdom of Spain ceded "to the United States in full property and sovereignty, all the territories ............... known by the name of East and West Forida," with an expressed provision that all the grants of land made by Spain before January 24th, 1818, in said territories shall be ratified and confirmed to the persons in possession of the lands.

2.  Under the Treaty of February 22nd, 1819, the United States acquired the ownership of all the swamp and overflowed lands in the area now constituting the territorial limits of the State of Florida that had not previously been granted by Spain, and the admission of the State of Florida into the Union by the Act of Congress approved March 3rd, 1845, did not affect the proprietary rights of the United States in the lands within the State that have been ceded to the United States by Spain where such lands did not constitute the beds or shores of the navigable waters of the State.

3.  The disposition of the swamp and overflowed lands granted to the State by Act of Congress of September 28, 1850, is within the legislative discretion, the obligation of the sovereign State to observe the condition of the grant that the lands "shall be applied, exclusively, as far as necessary, for the purpose of reclaiming said lands by means of levees and drains," resting only in the sovereign relations of the two governments.

4.  In recognition of the purpose of the grant by the United States to the State of the swamp and overflowed lands within the State, the legislature by Chapter 610, Acts of 1855, placed the lands in the "Internal Improvement Fund of the State of Florida," the lands being irrevocably vested in five trustees who are State officers, and their successors in office, "to hold the same in trust for the uses and purposes," stated in the act, among such uses and purposes being the requirement of Section 16 of the Act, Section 620, Gen. Stats., that the said trustees shall fix the price of the lands and make such arrangements for the drainage of the lands as in their judgment may be most advantageous to the fund and the settlement and cultivation of the lands.

5.  The provisions and purposes of Chapter 610, Acts of 1855, Sections 616, 617 and 620, General Statutes, and Chapter 3441 Acts of 1883, Sections 624, 625 and 626 General Statutes, are not inconsistent or repugnant, but such provisions are intended to operate together for the purpose of securing the drainage, settlement and cultivation of the swamp and overflowed lands that are held by the Trustees of the Internal Improvement Fund under the Act of 1855.

6.  While the Act of 1883, (Sections 624, 625, and 626 of the General Statutes of 1906) is in force, it is the duty of the trustees to comply with its provisions where there are lands held by them that are subject to such provisions.

7.  Section 16, Chapter 610, Acts of 1855, Section 620 of the General Statutes of 1906, imposes upon the Trustees of the Internal Improvement Fund the duty to make such arrangements for the drainage of the swamp and overflowed lands as

is most advantageous to the fund and the settlement and cultivation of the lands.

8.  The duty of the Trustees of the Internal Improvement Fund to fix the price of the swamp and overflowed lands held by them and to make arrangements for the drainage and settlement and cultivation of the lands, is recognized by Chapter 3326, Acts of 1881, Section 628 General Statutes, as well as in special acts granting portions of such lands to railroad and canal companies and others for different purposes of internal improvement.

9.  The provisions of Chapter 3451, Acts of 1883, Sections 624, 625 and 626, General Statutes, do not impair the statutory duties of the Trustees of the Internal Improvement Fund to fix the price and make arrangements for the drainage, settlement and cultivation of the swamp and overflowed lands of the fund, except that actual settlers have the advantages stated in the act in purchasing eighty acres each of such lands as are subject to the terms of the act of 1883.

10. When the Trustees of the Internal Improvement Fund have in effect appropriated or applied lands to the purposes of the trust under the Act of 1855, to drain the swamp and overflowed lands of the fund, such lands are not subject to occupancy and purchase under the act of 1883, Sections 624, 625 and 626 of the General Statutes.

11. If the matter contained in an answer in an equity cause is relevant or can have any influence in the decision of the subject-matter of the controversy, it is not impertinent.

12. In a proceeding to require the Trustees of the Internal Improvement Fund to make a conveyance of 80 acres of land under the Act of 1883, Sections 624, 625 and 626 of the General Statutes, where there are averments in the answers of the defendants which in effect state that prior to the entry under the Act of 1883, the trustees had lawfully appropriated or pledged or bound the particular lands for the purposes of the trust to drain the lands under the Act of 1855, Section 620 of the General Statutes, exceptions to such averments

upon the grounds that they are impertinent and irrelevant should be overruled.

13.  Where debts or land grants or contracts existed as "legal obligations" against the swamp and overflowed lands held by the Trustees of the Internal Improvement Fund when the Act of 1903, Sections 869, 870 and 871 of the General Statutes first became effective, such obligations have priority over the disposition of the fund as provided in said Sections 869, 870 and 871.

14.  Whatever may be the legal effect of Sections 869, 870 and 871, of the General Statutes, which require the proceeds of swamp and overflowed land to be applied to the construction of hard roads, such sections do not of themselves render impertinent averments in an answer that swamp and overflowed lands which have been applied to the trusts to drain under the act of 1855, Section 620 General Statutes, are not subject to sale under the Act of 1883, Sections 624, 625 and 626 General Statutes.

Appealed from the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

*Park Trammell,* Attorney General, and *W. H. Ellis,* for Appellants;

*Stewart & Bly,* for Appellee.

WHITFIELD, C. J.—The bill of complaint herein was filed by Charles H. Root for the purpose of requiring the Trustees of the Internal Improvement Fund to make to him a conveyance of a certain 80 acres of land under Chapter 3151, Acts 1883, Sections 624, 625 and 626 of the General Statutes of 1906, which authorize certain classes of actual settlers upon the designated public lands to

purchase them at 25 cents per acre, and for the further purpose of having canceled a conveyance of the land made by the Trustees to one Cardner under the authority given the Trustees by Chapter 610, Acts of 1855, Sections 616, 617 and 620 of the General Statutes relating to internal improvements in the State. An order overruling a demurrer to the bill of complaint was affirmed in Trustees of Internal Imp. Fund v. Root, 59 Fla. 648, 51 South. Rep. 535, where a brief outline of the bill will be found.

Exceptions on the ground of impertinency and irrelevancy were sustained to the following portions of the answers filed by the Trustees and by Cardner: That the provisions of Chapter 3151 Acts of 1883, Sections 624, 625 and 626 of the General Statutes, "were enacted after and subsequent to the law of 1855, being Chapter 610, which was the law creating the Internal Improvement Fund and the original trust and that the provisions thereof cannot in any wise defeat the provisions of said Chapter 610 of the Acts of 1855." "Defendants deny that upon the alleged making of affidavit of complainant and the payment of 25 cents per acre, the complainant was entitled to receive a title to said land." "These defendants further answering complainant's bill, say that by Act of Congress of the United States, being an Act to Enable the State of Arkansas and other States to Reclaim the Swamp and Overflowed Lands within their Limits, passed and approved the 28th, day of September 1850, and for accuracy of statement, the defendants refer to the Act itself, which is made a part of this answer, the State acquired the land for which the complainant is suing and claiming that he is entitled to under the law to which he has made reference, that said lands as well as all the swamp and overflowed lands that have been

patented to the State of Florida by the United States
Government under the said Act of Congress of September
28th, 1850, were accepted by the State subject to the
conditions provided by the said Act of Congress; that
the said land in question, as well as all other swamp and
overflowed lands that have been patented to the State of
Florida under the said Act of Congress was granted to
the State for the purpose of enabling the State to con
struct the necessary levees and drains to reclaim the
whole of those swamp and overflowed lands in the State
that were unfit by reason of being swamp and overflowed
for cultivation. That the said Act of Congress among
other things provided that the proceeds of said lands,
whether from sale or direct appropriation in kind, shall
be applied exclusively, as far as necessary, for the pur-
pose of reclaiming said swamp and overflowed lands by
means of levees and drains." "That the Trustees of the
Internal Improvement Fund of the State of Florida, in
pursuance of said Act governing the Trustees, were at
the time of the alleged location of the complainant on the
land in question, and continuously since have been
engaged in and carrying on the drainage and reclama-
tion of the swamp and overflowed lands held in such
Fund, as required by the said Chapter 610, of the laws of
Florida, being now Sections 616 and 617 of the General
Statutes, of Florida in that, to-wit: the Trustees have
laid out an extensive drainage system, in what is com-
monly known as the Everglades, consisting of several
hundred miles of main canal and the necessary locks
connected therewith, and they were at the time of the
alleged location on said land by the complainant, at the
time of his application therefor, and when he instituted
his suit, actively engaged in the excavation of said canals,
in furtherance of the drainage and reclamation of the

swamp and overflowed lands ('The Everglades') held by the said Internal Improvement Fund of the State of Florida, and are now operating four large dipper dredges upon the canals constituting part of the outlined drainage system necessary for the reclamation of said swamp and overflowed lands, having heretofore and within the past four years excavated approximately forty miles of drainage canals in said swamp and overflowed lands, said canals being sixty feet wide, of an average depth of eight feet. That the Internal Improvement law governing the Trustees of the Internal Improvement Fund makes it incumbent upon these Trustees, defendants, to drain and reclaim the said syamp and overflowed lands, and for the purpose of carrying out this feature of the trust as created by the Act of 1855, these, Trustees, defendants, have the right to sell any and all of said swamp and overflowed lands, and the said lands are subject to this said trust, and it is a prior trust and obligation on said fund to that which may have been created by the said homestead Acts upon which complainant sues. That said original trust, namely: that of drainage and reclamation of the swamp and overflowed lands held by the Trustees of the Internal Improvement Fund, has never been completed, there has never been an accounting required of the Trustees, nor has the trust been terminated. That in accordance with law, the Trustees, of the Internal Improvement Fund intend to drain the swamp and overflowed lands now held in the Fund. That the only available means of carrying on said drainage and reclamation is by the sale of said lands, and while the Trustees cannot estimate the exact cost of said lands, and while the Trustees cannot estimate the exact cost of said drainage and reclamation, it is

believed by them that there is not sufficient land now in said Fund to carry out the provisions of the said Sections 624, 625 and 626 of the General Statutes, and also to carry out the prior and superior trust as provided by Chapter 610 of the laws of Florida: namely, that of drainage and reclamation. That as far as the defendants, the Trustees of the Internal Improvement Fund, can now determine, it will be necessary for them to use all the lands now in the Fund for the purpose of carrying out the original existing trust." "That the sale made by the defendants, the Trustees, to the said John J. Cardner, was made for the purpose of raising funds to carry on the aforesaid Drainage and reclamation, and the proceeds of said sale were applied to said purpose. The defendants, for further answer, say: That the Trustees of the Internal Improvement Fund of the State of Florida are charged under the laws of Florida with the duty in the exercise of their discretion of faithfully observing and performing the obligations cast upon them by the laws of Florida relating to the drainage and reclamation of the swamp and overflowed lands aforesaid; and that in the exercise of the discretion vested in said Trustees of the Internal Improvement Fund, they have from time to time during the existence of said Internal Improvement Fund, and more especially within recent years devoted their best efforts and great energy to carrying out the trusts vested in them under the act of the Legislature approved January 6th, 1855; and that in the performance of said trust they have obligated the fund expressly and specifically by duly executed contracts to the cutting of certain canals designated in the Everglades of Florida, to the full extent of all available funds of said trust; and that it was found necessary in

43—Vol. 63

the consideration of the duties imposed and the performance of said trust, to limit said writing obligatory to the available funds, on account of the same being insufficient to carry out the work necessary to complete the work involved in draining and reclaming the swamp and overflowed lands as required of said Trustees under the first trust of said Fund, as expressly provided and set forth in the Act of the Legislature approved January 6th, 1855; and that all of the lands vested in the Trustees for the purposes of the original trust are necessary for the execution and performance of said first and original trust, which the Trustees have ·obligated themselves to perform, and have assumed obligations as far as available funds are at command for this purpose, and have assumed the obligation of said trust beyond available funds, and all of the lands of said Fund are needed by the Internal Improvement Fund to provide for and meet the obligations assumed and contemplated by the Trustees in their discretion, in the present actual execuiton of the original existing trusts committed to them.

The defendants, further answering, say that the Constitution of Florida provides among other things that 25 per cent of the proceeds of the sales of public lands shall be paid into the State School Fund. That this provision of the Constitution of Florida has been in full force and effect since the ratification of the Constitution of 1868, since which date millions of acres of the public lands of Florida have been sold, out of the proceeds of which, the State School Fund, by reason of the Constitutional provisions, was entitled to receive 25 per cent. That from the date of the ratification of said State Constitution of 1868 until on or about the month of November, 1908, the State School Fund has not

received any part or portion of said proceeds of the sales of public lands. That since date of about November 1908, and especially during the year 1909, it has been found and determined that the Trustees of the Internal Improvement Fund, in whom the legal title to the public lands of the State has been vested since the adoption of Chapter 610, Laws of Florida approved January 6, 1855, are due said State School Fund a large sum of money, approximately more than one million, which has been admitted by resolutions adopted by the Trustees of the Internal Improvement Fund, and further by the payment of large sums growing out of the sales of lands since that date; further admitting that 25 per cent. of the proceeds of the sales of public lands derived since 1868 as aforesaid, is an obligation on the Internal Improvement Fund, the payment of which will lessen and diminish the total resources and proceeds at the disposal of said Trustees in the discharge of the original trusts aforesaid vested in them to drain and reclaim the swamp and overflowed lands.

That 25 per cent. of the proceeds of future sales of public lands are likewise required to be paid over to the State School Fund, by virtue of said constitutional provision, which is by virtue of the Constitution aforesaid a prior and superior obligation on the Internal Improvement Fund to that created by the provisions of the Act of the Legislature of 1883 providing for the sale to actual settlers, to any person being the head of a family over the age of 21 years and a citizen of the State for homestead purposes, under which the complainant claims.

The defendants, further answering, say, that they are proceeding in good faith, and with great energy to perform the original trust imposed upon them by the Act

approved January 6th, 1855, requiring them to drain
and reclaim the swamp and overflowed lands of the State
Fund aforesaid, which is regarded by the Trustees as the
first trust to be observed by them.    That they are like-
wise endeavoring to discharge the second trust as rapidly
as they find themselves in a position so to do, viz: that
created under the Constitution of Florida of 1868, pro-
viding for the payment into the school fund of 25 per
cent. of the proceeds of the sale of public lands.    That
there is not sufficient lands or funds to enable said Trus-
tees to perform the subsequent and other trusts without
abandoning the first trust, which the said Trustees in
their discretion are exerting themselves to the utmost to
perform, and that compliance with the demand of the com-
plainant to comply with the Act of 1883 with reference
to sales to actual settlers would require them to abandon
the first trust and the second trust and leave them in an
incomplete condition, to the great injury of the Fund and
all interests of the general welfare, and make it impossi-
ble for the said Trustees to discharge and perform the
original trusts as required by law.

The defendants, further answering, say, that it was
ascertained about the year 1903, that the Trustees of the
Internal Improvement Fund did not have sufficient lands
and moneys to carry into effect the duties imposed upon
said trustees, and to perform the original trusts under
the laws governing the Internal Improvement Fund, and
at the same time provide for subsequent trusts provided
by subsequent Acts of the Legislature, and especially the
one relating to homesteads, approved in 1883, under
which the complainant sues; and the Trustees determined
at that time not to undertake to perform subsequent
trusts, but to husband their resources for the purpose of

observing and carrying out the first and original trust, and that in their efforts so to do, they have at all times since the year 1903 declined and refused to grant any lands or execute any deed therefor to claimants under the provisions of said homestead law enacted by the Legislature of Florida in 1883 aforesaid."

"That at the time of the settlement on the land described in the bill of complaint by Charles H. Root, the complainant, the Trustees of the Internal Improvement Fund of Florida, acting within their statutory authority and in the exercise of their discretion and with due regard for the trusts committed to them had previously laid out and defined a drainage district which embraced all of the swamp and overflowed lands south of the township line between townships thirty-two (32) and thirty-three (33) South, and east of the range line between ranges twenty-seven (27) and twenty-eight (28) East, and were actively and actually engaged at the time of said settlement on the lands described in the bill in making such arrangements for the drainage of the swamp and overflowed lands embraced within said drainage district as in their judgment was most advantageous to the Internal Improvement Fund and the settlement and cultivation of the said lands, and that all of the said swamp and overflowed lands embraced within said drainage district and owned by the said Internal Improvement Fund, including the land described in the bill of complaint, were necessary for the execution by the trustees aforesaid of the work undertaken and begun by them of draining the said swamp and overflowed lands contained in said drainage district and accomplishing the settlement and cultivation thereof.

That at the time of the alleged settlement of the land

described in the bill of complaint by the said Chas. H. Root and at the time of his making and filing with the Commissioner of Agriculture the affidavit alleged to have been made and filed in compliance with the provisions of Section six hundred and twenty-five (625) of the general statutes, the said Trustees of the Internal Improvement Fund were actually engaged in the work of draining and reclaiming the swamps and overflowed lands owned by the said Internal Improvement Fund of the State of Florida lying within the said drainage district, and said Trustees had made and were actually engaged in making such arrangements for the drainage of said land as in their judgment was most advantageous to the said Internal Improvement Fund and the settlement and cultivation of the said land: that in the performance and execution of said work the said Trustees at the time of the alleged settlement on the land described in the bill by the complainant and at the time of the filing of the affidavit alleged had assumed obligations and entered into contracts requiring and demanding the expenditure of large sums of money from time to time, which said obligations and contracts were entered into the and assumed by the said Trustees in the execution and performance of the said public trust designated by Chapter six hundred and ten (610) of the laws of Florida of making such arrangement for the drainage of the swamps and overflowed lands as in the judgment of the Trustees should be most advantageous to the Internal Improvement Fund and the settlement and cultivation of the said land.

That in order to redeem said obligations and execute said contracts and carry on said work of draining and reclaiming the swamp and overflowed lands embraced in said drainage district to the end that said public trust

so designated and defined by said act might be fully and conscientiously performed by the said Trustees it became and was necessary for said Trustees to raise large sums of money and have the untrammelled use and control and disposition of the said Internal Improvement Fund and all of the lands owned by the said Fund and that from time to time it became and was necessary for said Trustees to make sale of such lands as they deemed most advantageous to said Fund in the execution of said public trust at and for the highest and best price obtainable for said lands.

These defendants further answering say: that for many years prior to the 17th day of June, 1907, the date upon which the complainant alleges that he entered upon the land described in said bill and made improvements thereon as alleged in said bill, and ever since such time prior to the said 17th day of June, 1907, continuously to the present time the said Trustees of the Internal Improvement Fund were and have been actively engaged in the performance of the said public trust imposed by the said act of 1855, Chapter six hundred and ten (610) of making such arrangement for the drainage of the swamp and overflowed lands as in their judgments were most advantageous to the Internal Improvement Fund and the settlement and cultication of the land, and that all of the swamp and overflowed lands which were vested in the said Trustees for the purposes of the said trusts were necessary for the execution by the said Trustees of the said original public trust, which said public trust before and at the time of the alleged settlement by the complainant upon the land described in the bill was actually being performed by the said Trustees and for which performance obligations had been and were

assumed by the said Trustees requiring the expenditure of large sums of money.

That if the trusts imposed by the Legislature of Florida upon the Internal Improvement Fund as designated and defined in sections six hundred twenty-four, six hundred twenty-five and six hundred twentysix (624, 625 and 626) of the General Statutes of the State of Florida, were required to be performed by the Trustees of the Internal Improvement Fund and observed by them, that the said Trustees of the Internal Improvement Fund would be powerless to execute and continue to completion the said original public trust imposed upon the Fund by the said Act of 1855, Chapter six hundred and ten (610), for the reason that the said Trustees would be required to dispose of the swamp and overflowed lands at and for a price so small and inadequate that it would be impossible to raise sufficient funds to carry on the said work of drainage and reclamation undertaken by them as aforesaid. That said Trustees have no other source of revenue to enable them to continue said work except the sale from time to time, of swamp and overflowed lands.

The defendants further answering say that the lands described in the bill of complaint, at the time of complainant's settlement thereon and at the time of the alleged filing by him of the said affidavit, with the Commissioner of Agriculture as required by Sections six hundred and twenty-five (625) of the General Statutes, were, on account of their location and situation in said drainage district with reference to the canals then in course of construction in the work of draining and reclaiming the swamp and overflowed lands, needful to be used by the said Trustees at their discretion to meet the obligations assumed by the said Trustees, in the then

actual execution of the said original public trust committed to them as aforesaid, of making such arrangements for the drainage of the swamp and overflowed lands as in their judgment was most advantageous to the Internal Improvements Fund and the settlement and cultivation of the said land.

These defendants further answering say that the swamp and overflowed lands contained in said Internal Improvement Fund now and at the time of the filing of the bill of complaint herein and at the date of the settlement upon the lands described in the bill by the said complainant were and are not sufficient for both the public trust of drainage and reclamation designated by the act of 1855, Chapter six hundred and ten (610) and the trust designated and directed by the Legislature in Sections six hundred and twenty-four, six hundred and twenty-five and six hundred and twenty-six (624, 625 and 626) of the General Statutes of the State of Florida to be performed.

These defendants further answering say that the sale of the land described in the bill of complaint by the Trustees of the Internal Improvement Fund to the said John J. Gardner, was made by the said Trustees for the purpose of aiding them in the execution of the said public trust imposed by the Act of 1855, Chapter six hundred and ten (610), to make such arrangement for the drainage of the swamp and overflowed lands as in the judgment of the said Trustees was most advantageous to the Internal Improvement Fund, and the settlement and cultivation of the land, and at the time of making said sale the said Trustees were actually engaged in the performance of said Trust and had assumed obligations and entered into contracts for the performance of said Trust requiring

the raising and expenditure of large sums of money by them.

The defendant Trustees further answering say that before the bill was filed in this case, they transferred and conveyed the title to the land described in the bill and at the time of the filing of the said bill had no interest in the subect matter of this suit."

Replication was filed to the answers after the exceptions thereto had been sustained and testimony was taken as to the occupancy of the land by Root and his making of the statutory affidavit and tendering 25 cents per acre for the land. Final decree for the complainant was rendered and the defendants appealed therefrom. Errors are assigned on the orders sustaining the exceptions to the answers and on the final decree.

By treaty of February 22nd, 1819, the Kingdom of Spain ceded "to the United States in full property and sovereignty, all the territories ................................ known by the name of East and West Florida," with an expressed provision that all the grants of land made by Spain before January 24th, 1818, in said Territories shall be ratified and confirmed to the persons in possession of the lands. State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353.

Under that Treaty the United States acquired the ownership of all the swamp and overflowed lands in the area now constituting the territorial limits of the State of Florida that had not previously been granted by Spain, and the admission of the State of Florida into the Union by the Act of Congress approved March 3rd, 1845, did not affect the proprietary rights of the United States in the lands within the State that have been ceded to the United

States by Spain where such lands did not constitute the beds or shores of the navigable waters of the State.

By Act of Congress approved September 28th, 1850, the United States, "to enable the State ................................................. to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein," "granted to said State," "the whole of these swamp and overflowed lands, made unfit thereby for cultivation." "Provided, however, that the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, 'as far as necessary, for the purpose of reclaiming said lands by means of the levees and drains aforesaid."

By virtue of this grant, the State has received title by patents from the United States to perhaps twenty million acres of swamp and overflowed lands in the State, including the eighty acres in controversy. The disposition of the lands thus granted to the State of Florida was within the Legislative discretion, the obligation of the sovereign State to observe the condition that they "shall be applied, exclusively, as far as necessary, for the purpose of reclaiming said lands by means of the levees and drains aforesaid," resting only in the sovereign relations of the two governments.

In recognition of the purpose of the grant by the United States to the State of the swamp and overflowed lands, the Legislature by Chapter 610, Acts of 1855, placed the lands granted to it by the Act of Congress of September 28th, 1850, in the "Internal Improvement Fund of the State of Florida," the lands being "irrevocably vested in five trustees" who are State officers, and their successors in office, "to hold the same in trust for the uses and purposes" set out in the act. Trustees of I. I. Fund

v. St. Johns Ry. Co., 16 Fla. 531. One of the uses and purposes stated in Section 16 of Chapter 610, Acts of 1855, now Section 620, of the General Statutes of 1906, is as follows:

"620. The Trustees of the Internal Improvement Fund shall fix the price of the public lands included in the trust, having due regard to their location, value for agricultural purposes or on account of timber of naval stores, and make such arrangements for the drainage of the swamp or overflowed lands as in their judgment may be most advantageous to the Internal Improvement Fund, and the settlement and cultivation of the lands; and the said trustees shall encourage actual settlement and cultivation of the said lands by allowing pre-emptions under such rules and regulations as they may deem advisable: Provided, That in no case shall pre-emption for more than one section of land be granted to any one settler."

In 1883, the legislature enacted Chapter 3451, now sections 624, 625 and 626 of the General Statutes, as follows:

"624. Any person being the head of a family or twenty-one years' of age, and a citizen of the State, shall be entitled to purchase eighty acres or less quantity of any lands of the Internal Improvement Fund donated to the State by the Act of Congress of September 28, 1850, for the price of twenty-five cents per acre, as provided in the two sections next following."

"625. The person applying for the benefit of the last preceeding section shall file with the Commissioner of Agriculture his affidavit that he is the head of a family, or is twenty-one years of age, and is a citizen of this State, and that such purchase is made for the purpose of actual settlement and cultivation and that he has no

other homestead, and that such purchase is made for his exclusive use and benefit, and not directly or indirectly for the use or benefit of any other person; and upon filing said affidavit, and the payment of twenty-five cents per acre, he shall receive a title to said land."

. "626. When any person entitled to the benefit of the two preceding sections shall have settled on any land subect to purchase under said sections, and shall have made improvements thereon by erecting a building and fencing, and cultivating not less than one acre thereof, he shall have the first right to purchase the land so settled, and any other person desiring to purchase the land so settled shall give to the original settler six months' notice of his intention before being permitted to purchase the same."

It appears that Root, a citizen of Florida over twenty-one years of age, entered upon the eighty acres of land in controversy about June 20th, 1907, and made improvements thereon and cultivated more than one acre thereof; that he has since remained on and cultivated the same; that about February 11th, 1908, he filed with the Commissioner of Agriculture his affidavit, and tendered therewith twenty dollars for the eighty acres under the provisions of Sections 624, 625 and 626 above quoted. The Trustees of the Internal Improvement Fund refused to convey the land to Root and conveyed it to Cardner. Root seeks relief in this equity proceeding.

The provisions of the quoted enactments of 1855 and 1883 are not inconsistent or repugnant, but are intended to operate together for the purpose of securing the drainage, settlement and cultivation of the swamp and over flowed lands that were committed to the trustees under the act of 1855.

While the act of 1883, (Sections 624, 625 and 626 of the General Statutes of 1906) is in force, it is the duty of the trustees to comply with its provisions where there are lands held by them that are subject to such provisions. Trustees of Internal Imp. Fund v. Root, 59 Fla., 648, 51 South. Rep. 535.

Section 16, Chapter 610, Acts of 1855, Section 620 of the General Statutes of 1906, imposes upon the Trustees of the Internal Improvement Fund the duty to make such arrangements for the drainage of the swamp and overflowed lands as is most advantageous to the fund and the settlement and cultivation of the lands. Trustees I. I. Fund v. Gleason, 15 Fla. 384.

The statutory duty of the Trustees of the Internal Improvement Fund to fix the price of the public lands included in trust, and to make such arrangements for the drainage of the swamp and overflowed lands as in their judgment may be most advantageous to the fund and the settlement and cultivation of the lands, continues under Section 620 of the General Statutes of 1906, and this duty is recognized by Chapter 3326 Acts of 1881, Section 628, of the General Statutes of 1906, as well as in the special acts granting portions of the swamp and overflowed lands to railroad and canal companies and others for different purposes of internal improvement.

In the provisions of Chapter 3451, Acts of 1883, Sections 624, 625 and 626, of the General Statutes of 1906, there are no indications that the statutory duty of the trustees to fix the price of lands and to make arrangements for the drainage, settlement and cultivation of the swamp and overflowed lands, is impaired except that the actual settlers should have the advantages stated in the act in purchasing eighty acres each of such lands as

are subject to the terms of that statute. If prior to the actual occupancy of the eighty acres here being considered by Root and the compliance by him with the requirements of the statute, the particular land had been in effect appropriated or applied by the trustees to the purposes of the trust to drain the swamp and overflowed lands held by them under the statutory trust or for other lawful purpose, the land was not then subject to occupancy and purchase by Root under Sections 624, 625 and 626.

If matter contained in an answer in an equity cause is relevant or can have any influence in the decision of the subject matter of the controversy, it is not impertinent. Bush v. Adams, 22 Fla. 177; Holzendorf v. Terrell, 52 Fla. 525, 42 South Rep. 584.

It cannot be said that the matters stricken from the answers upon the exceptions in this case are irrelevant, or that the stricken portions of the answers can have no influence in the decision of the cause, therefore error in sustaining the exceptions is apparant.

The stricken portions of the answers refer to enactments under which trusts were established and duties imposed upon the trustees to use the land of the trust for public purposes, and in effect aver matters that have at least some bearing and influence upon the controversy. In some of the stricken matter it is specifically averred that when Root entered upon the land and made application to purchase it the Trustees of the Internal Improvement Fund in the performance of the trust imposed upon them by Section 16, Chapter 610, Acts of 1855, Section 620 of the General Statutes of 1906, to drain the swamp and overflowed lands belonging to the fund, had laid out and defined a drainage district which embraced

a stated large area of the said swamp and overflowed lands, including the eighty acres in controversy, and were actively engaged and actually engaged in making arrangements for the drainage of the said lands, and that all of said lands including that in controversy were necessary for the execution of the work undertaken and begun; that the trustees had made and were actually engaged in making such arrangements for the drainage of said land as in their judgment was most advantageous to the said Internal Improvement Fund and the settlement and cultivation of said land; that in the performance and execution of said work the said trustees at the time of the alleged settlement on the land ............................... and at the time of the filing of the affidavit alleged, had assumed obligations and entered into contracts requiring and demanding the expenditure of large sums of money from time to time, which said obligations and contracts were entered into and assumed by the said Trustees in the execution and performance of the said public trust; "that in order to redeem said obligations and execute said contracts and carry on said work of draining and reclaiming the swamp and overflowed lands embraced in said drainage district to the end that said public trust so designated and defined by said act might be fully and conscientiously performed by the said Trustees it became and was necessary for the said Trustees to raise large sums of money and have the untrammelled use and control and disposition of the said Internal Improvement Fund and all of the lands owned by the said Fund and that from time to time it became and was necessary for said Trustees to make sale of such lands as they deemed most advantageous to said Fund

in the execution of said public trust at and for .the highest and best price obtainable for said lands."

These and other portions of the stricken matter as set out in this opinion clearly relate to the equities alleged in the bill of complaint and the exceptions on the ground of irrelevancy and impertinance should not have been sustained.

If the proofs show that before Root settled in the lands and offered to purchase, the lands had been lawfully appropriated or used or pledged or bound for the purposes of an existing trust that was actually being performed as required by law, the entry of Root upon the land and his offer to buy was not within the conditions contemplated by Sections 624, 625 and 626 of the General Statutes of 1906.

It is suggested that as Sections 869, 870 and 871 of the General Statutes of 1906, require the proceeds from the sales of all swamp and overflowed lands after the payment of "all legal obligations" against them, to be paid to the State Treasurer for distribution among the counties for constructing hard roads, the exceptions to the averments of the answers as to the use of the lands for the purposes of the trust to drain under Section 620 of the General Statutes of 1906, were properly sustained for impertinence.

The statutes of the State contain many legislative enactments. making disposition of the swamp and overflowed lands belonging to the State, and such disposi tions are made "subject to the rights of all creditors of the Internal Improvement Fund, and to the trust to which said fund is applicable and subject under the act approved January 6th, 1885, and entitled 'an act to provide for and encourage a liberal system of internal .im-

provements in this State,' and subject to control, man agement and sale and application of said fund and the lands constituting the same, by the Trustees of the Internal Improvement Fund, for the purposes of said trust under said act."

Where debts or land grants or contracts existed as "legal obligations" against the lands at the first enactment in 1903 of Sections 869, 870 and 871 of the General Statutes of 1906, such obligations have priority over the disposition of the fund as provided in Sections 869. 870 and 871.

It does not appear that "all legal obligations" existing against the lands or the fund when the act of 1903 became effective have been discharged or satisfied, and the intended beneficiaries of the act of 1903 are not parties to this suit and are not represented here. The answers specifically aver that moneys due by the Trustees to the school fund under the constitution have not been paid.

Whatever may be the legal effect of the provisions of Sections 869, 870 and 871, of the General Statutes of 1906, such provisions do not of themselves render impertinent the portions of the answers that were stricken in this case.

As there was error in sustaining the exceptions to the answer, the defendants were thereby deprived of an essential part of their defense, therefore, the final decree is reversed and the cause is remanded for appropriate proceedings.

TAYLOR, SHACKLEFORD, COCKRELL and HOCKER, J. J., concur.