**UNITED STATES ex rel. McCANN v. THOMPSON, Warden.**

**No. 388.**

Circuit Court of Appeals, Second Circuit.

July 19, 1944.

John F. X. Finn, of New York City, and Hallam M. Richardson, of Brooklyn, N. Y., for appellant.

Richard J. Burke, of New York City (James B. M. McNally, U. S. Atty., and John J. Donovan, Jr., Asst. U. S. Atty., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The relator appeals from an order dismissing a writ of habeas corpus, issued to release him from custody under a judgment of conviction for the fraudulent use of the mails. The indictment was returned on February 18, 1941, the relator was arraigned on April 2nd, and in July of that year was tried before Judge Otis—upon his own consent without a jury. He was found guilty on all counts, sentenced to prison for six years, and fined $600; he has appealed, and that appeal is still pending. This court discharged him upon habeas corpus on March 12, 1942 on the theory that, not being represented by counsel, his consent to waive a jury was invalid. United States ex rel. Gene McCann v. Adams, 2 Cir., 126 F.2d 774. That order was reversed on December 21, 1942, Adams, Warden v. United States ex rel. McCann, 317 U.S. 269, opinion amended 317 U.S. 605, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435, and on March 3, 1943 he was again placed in custody. On April 12, 1943, he procured a writ of habeas corpus out of the district court, which was dismissed on April 22nd, and the order of dismissal later affirmed by this court. On November 8, 1943, the Supreme Court also reversed this order of affirmance, and remanded the writ to the district court for further hearing, United States ex rel. McCann v. Adams, Warden, 320 U.S. 220, 64 S.Ct. 14. That hearing came on before Judge Hulbert, who on January 26, 1944, dismissed the writ, 3 F.R.D. 396, and the relator has appealed from that order; that appeal also is pending. The relator then applied for this writ on February 25, 1944, and the hearing upon that also came on before Judge Hulbert, who dismissed the writ on March 29, 1944, 56 F.Supp. 661. It is the appeal from this order that is now before us.

The petition, although it is in thirty-eight articles, is addressed for the most part to supposed infirmities of the indictment, owing to the disqualification of the grand jurors, and to the fact that the only twelve jurors, who were at once not disqualified and who voted a true bill, were not present during the taking of all the testimony on January 22, 24, 27 and 28, 1941. On the last day the indictment was voted; it was returned on February 18th. On the 22nd, the secretary of the jury, one Templeton, made an entry in the record that the foreman, Greene, and one of the jurors, Simmonds, disqualified themselves from taking any part, apparently because they deemed themselves biased because of former dealings with the relator. The petition alleged (Article 13), that seven more of the jurors were disqualified for bias because they "were either owners, partners or important executives, or members of defendants" in certain civil litigation between the relator and the Better Business Bureau—the transactions there involved being the same as those laid in the indictment. On the 22nd all twenty-three were present, of whom, if we deduct the two, admittedly disqualified and the seven, alleged to have been disqualified, fourteen were qualified. On the 24th, two of these fourteen were absent, and on the 27th two others of these fourteen were absent (Articles 5 and 6). Thus, although there were twelve qualified jurors on both days, they were not the same twelve. On the 28th, two of the fourteen were absent (Articles 7 and 8); of whom one was one of the two absent on the 24th, and the other had not been absent before. It follows from these allegations that twelve qualified jurors did not all hear the whole evidence. One juror was absent when the indictment was presented to the court (Article 9). On March 5, 1941—and therefore before his arraignment—the relator filed a plea in abatement to, and motion to quash, the indictment for the disqualification of grand jurors, and this motion was denied. Although the petition at bar merely alleges that the disqualifications of jurors were not "disclosed or known to the trial court at the time the indictment was handed up," and does not therefore allege that they were not known to the relator himself, we shall nevertheless assume that some at least of the disqualifications of the seven allegedly disqualified jurors were not known to him at the time of the plea and motion on March 5, 1941. These facts constitute the relator's chief reliance here.

However, the petition alleged certain other grounds, and these we shall dispose of at the outset. First, that the grand jury refused to allow the relator to appear before it as a witness. To this privilege he was not entitled; the practice was utterly unknown at common law, and, although grand juries have in recent times occasionally invited persons, whose conduct they are examining, to appear, they are never obliged to do so, and it is in our opinion a custom more honored in the

breach than in the observance. United States v. Bolles, D.C.Mo., 209 F. 682; Duke v. United States, 4 Cir., 90 F.2d 840, 841, 112 A.L.R. 317. Besides, even if the refusal had been an error, it would not be reviewable on habeas corpus. We may group together the other objections and summarize them as follows: (1.) that the jurors refused to consider a "presentment" submitted to them by the relator; (2.) that they would not avail themselves of records in the state courts and of the Securities and Exchange Commission; (3.) that the prosecution was instigated by the animus of personal enemies of the relator; (4.) that the United States attorney and his assistants were hostile to him because of past relations with his enemies; (5.) that the assistant who tried the case was not admitted to the bar. The mere statement of these grievances exposes their want of substance, even if they were reviewable on habeas corpus, as they would not be, if they had any merit. They are frivolous, and we shall not discuss them. The only two questions deserving considerations are: first, whether the disqualifications of the jurors and their absences on some of the days when evidence was taken, vitiated the indictment; and second, whether the relator was properly advised of his constitutional right to be tried to a jury, when he consented to be tried to a judge. The second of these was the subject of an extended hearing upon the first writ before Judge Hulbert, and will be reviewed when that appeal comes before us. We could not decide it upon this record anyway; we should have to remand the case to the district court for a hearing which would necessarily repeat the evidence already taken; and the record on that appeal would be as difficult to prepare as the record on the pending appeal. While it is quite true that an order dismissing one writ of habeas corpus does not formally estop the relator from suing out another on the same grounds, that does not mean that he may again and again call upon the court to repeat its rulings. Even this great writ can be abused, and when the question has once been decided upon full consideration, there must be an end, else the court becomes the puppet of any pertinacious convict. Salinger, Jr. v. Loisel, United States Marshal, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; United States ex rel. Bergdoll v. Drum, 2 Cir., 107 F.2d 897, 129 A.L.R. 1165. We refuse therefore to take up the second question upon this appeal. The same considerations in fact apply equally to the supposed disqualification of the grand jurors and to their absences. It is not true that Judge Hulbert did not consider these questions upon the earlier writ; his opinion shows that he did. Nevertheless, since it is within our power to consider them (as it was within his to reconsider them), it seems best to us to lay any doubts about them once and for all, so that this apparently interminable prosecution may be finally concluded, at least in some of its aspects.

■ Section 554a of Title 18 U.S.C.A. provides that it shall not invalidate an indictment "that one or more unqualified persons served upon the grand jury * * * if * * * twelve * * * jurors after deducting the number so disqualified, concurred." As has appeared in our statement of the facts, the indictment was voted on the 28th, on which day four of the twenty-three were absent—Nagle, Schaff, Wylie and Hutton,—making seventeen who voted, because Greene and Simmonds did not. Of these seventeen Templeton, Comerer, Michael, Rorer and Stern were among the allegedly disqualified, leaving twelve not disqualified and voting; and the statute was satisfied. As we understand him, the relator suggests that the mere presence of the disqualified jurors along with the others, vitiated the indictment. But a disqualified juror is still a juror, he is not an interloper; the very statute itself presupposes that he may have been present and may have actually voted. The petition also alleges on information and belief (Article 16) that Greene and Simmonds "created in the jury room bias * * * and influenced" the "deliberations and vote." Also (Article 18) that they "admittedly participated in the discussions upon your petitioner's request to be heard and at least * * * Greene admittedly recommended * * * that petitioner be not heard." The minutes of the grand jury contradict these allegations; they state that Greene and Simmonds disqualified themselves and neither participated in any discussions nor voted to indict McCann. This must prevail against allegations, not only made upon information, but not even disclosing the sources of that information.

■ Accordingly, we overrule on the merits the objection based upon the disqualification of the seven, and of their presence and part in the voting, as well as the presence and part in the proceedings of

Greene and Simmonds. As to the second objection, it has also already appeared that not all the qualified twelve, who voted a true bill, had heard all the evidence; and there is plenty of authority that, if any of a petit jury are asleep, or drunk, or otherwise unable to attend to the evidence, it vitiates the verdict. So far as we can find, however, the question as to grand jurors has arisen only once in a federal court. In re Meckley, D.C.Pa., 50 F.Supp. 274, affirmed, 3 Cir., 137 F.2d 310. Objection was there made to a grand jury's presentment of a witness for contempt that two of the jurors had been substituted under § 421 of Title 28 U.S.C.A., after the defendant had given part of his answers. This was overruled on the authority of that section, and on appeal the Circuit Court of Appeals apparently did not think the point worthy of notice. On principle the objection seems to us not well taken. Since all the evidence adduced before a grand jury—certainly when the accused does not appear—is aimed at proving guilt, the absence of some jurors during some part of the hearings will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote. Against this we can think of nothing except the possibility that some of the evidence adduced by the prosecution might conceivably turn out to be favorable to the accused; and that, if the absentees had heard it, they might have refused to vote a true bill. No one can be entirely sure that this can never occur; but it appears to us so remote a chance that it should be left to those instances in which it can be made to appear that the evidence not heard was of that character, in spite of the extreme difficulty of ever proving what was the evidence before a grand jury. Indeed, the possibility that not all who vote will hear all the evidence, is a reasonable inference from the fact that sixteen is a quorum. Were the law as the relator argues, it would practically mean that all jurors present at the beginning of any case, must remain to the end, for it will always be impossible to tell in advance whether twelve will eventually vote a true bill, and if they do, who those twelve will be. The result of such a doctrine would therefore be that in a long case, or in a case where there are intervals in the taking of evidence, the privilege of absence would not exist. That would certainly be

an innovation, for the contrary practice has, so far as we are aware, been universal; and it would be an onerous and unnecessary innovation. Finally, the absence of one of the jurors when the indictment was presented in court was of no importance. If sixteen make a quorum and twelve may vote a true bill, it would be absurd to hold that twenty-three must be present at the merely formal rite of presenting the indictment. Renigar v. United States, 4 Cir., 172 F. 646, 26 L.R.A.,N.S., 683, 19 Ann.Cas. 1117, decided nothing to the contrary.

▇▇▇ We have considered the merits of both the objections raised, because they have been so persistently and repeatedly pressed upon us; but they are in fact not reviewable either upon this appeal, or upon the appeal from the earlier writ. At common law the only challenge to an indictment because of the improper constitution of the grand jury was by plea in abatement before trial. United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857. This, with a limiting condition, has now been put into statutory form in § 556a of Title 18 U.S.C.A., and perhaps extended (probably it was not an extension), to any "disqualification of a grand juror." The relator did move on March 5, 1941, to quash the indictment because no legal quorum had voted it a true bill; being before his arraignment, that was in season under § 556a. So far as on the facts then presented to the court, which are not in this record, it was an error to deny that motion, the error will appear upon the appeal from the conviction; but this is not the place to review it, certainly when the papers are not before us. If on the other hand there were other grounds which the relator did not then present, § 556a gave him until April 12, 1941,—ten days after his arraignment—to make a second motion; but it gave him no more. It follows therefore that upon this appeal we must assume that all those who voted for the indictment were qualified—including any who are alleged to have been disqualified by the "bias" imparted to them by the improper influence of Greene and Simmonds. So much assumed, it follows that the second objection as well as the first is bad: i.e., that twelve of the qualified jurors who voted did not hear all the evidence. This is so because, if the seven allegedly disqualified jurors must be treated as qualified, there were fourteen qualified jurors who heard all the evidence. As we have

said, all were present on the 22nd; all but Forbes and Schaff on the 24th; all but Carroll, Nagle, Scott and Wylie on the 27th; all but Nagle, Schaff, Wylie and Hutton on the 28th. Therefore there were at least an identical fourteen present upon all of the four days upon which any evidence was taken.

It may be argued that § 556a should not be interpreted as covering a case in which the accused did not learn of the disqualification of the jurors, and could not reasonably have been expected to do so, before his arraignment or during the ten succeeding days. It cannot be, it may be added, that the statute means to subject a man to the accusation of biased jurors without any opportunity for challenge; there must be some way to raise the point. There is indeed such a way; if an accused knows of no ground for bias or other challenge to the jury when brought up for arraignment, but wishes to reserve the privilege of examining further, he may, and he must, apply to the court to postpone the arraignment until he has had adequate opportunity to press his inquiries. Denial of such a postponement would in a proper case be an abuse of discretion. But the section does not mean that the point may be reserved beyond the time prescribed by § 556a, and raised at any later stage in the proceedings. The privilege was at common law somewhat similarly restricted. United States v. Gale, supra, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857. There is the best of reasons for restricting it, as § 556(a) itself recognizes; for, if one indictment is dismissed, a new one must be found and it will be subject to the statute of limitations so far as the time may have run meanwhile. This is not true when the error occurs in the trial, for the court ordinarily allows a new trial on the old indictment. It was to toll the statute in this interval that the concluding clause was added to § 556a; and it would in the plainest way defeat the purpose of Congress to entertain such a plea or such a motion after the time prescribed had passed. In the case at bar it would grant immunity to the relator for a crime, of which, as the record now stands, he has been lawfully convicted; an immunity based in no sense upon the merits of the trial, but only upon their regularities in the accusation. Nothing could more effectively defeat the interests of justice.

Order affirmed.