UNITED STATES of America, Plaintiff,

v.

LEVERAGE FUNDING SYSTEMS, INC., a corporation, Centaur Film, a corporation, Peter S. Traynor, an Individual, William G. McDonald, Jr., an Individual, Defendants.

No. CR 79–159–HP.

United States District Court,
C. D. California.

Oct. 17, 1979.

---

persons, F.R.Crim.P. 6(a), sixteen constituting a quorum. 8 *Moore's Federal Practice* ¶ 6.02[2], at 6–17 (2nd ed. 1978); *see* 18 U.S.C. § 3321, F.R.Crim.P. 6(a). For a grand jury to indict, twelve or more jurors must vote to return an indictment. F.R. Crim.P. 6(f). Defendants' motion to dismiss the instant indictment requires the court to address two questions: (1) whether at least twelve of the grand jurors who vote to return an indictment must be informed of all the evidence presented to the grand jury, and (2) whether a grand juror can be considered informed without having attended all sessions at which evidence is presented on the proposed indictment. To preserve the integrity of the grand jury system, the court rules that an indictment is valid under the Fifth Amendment and F.R.Crim.P. 6(f) only if at least twelve jurors attend all sessions at which the grand jury hears evidence on the proposed indictment. Because this requirement was not met, the indictment must be dismissed.

## I. *Factual Background*

On February 27, 1979, a grand jury returned an indictment charging defendants with having committed various felonies under federal law. This grand jury met and heard evidence on thirteen separate days, beginning on May 9, 1978. At each session, sixteen or more jurors were present, out of the twenty that constituted the grand jury. On the thirteenth day, with nineteen jurors present, the grand jury voted unanimously in favor of indictment. At first blush it would appear that the voting requirement of F.R.Crim.P. 6(f) was satisfied.

An examination of the grand jury attendance chart revealed, however, that of the nineteen jurors voting to return the indictment, only nine had attended each of the previous twelve sessions. The chart showed that ten jurors had missed one or more sessions and therefore were possibly unaware of some of the evidence when they voted. After this information was disclosed, defendants moved to dismiss the indictment. They asserted that only jurors fully aware of the evidence presented can

Andrea Sheridan Ordin, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Theodore W. Wu, Asst. U. S. Atty., Asst. Chief, Criminal Division, Los Angeles, Cal., for plaintiff.

Richard H. Kirschner, Los Angeles, Cal., Paul J. Fitzgerald, Beverly Hills, Cal., for defendants.

## ORDER DISMISSING INDICTMENT

PREGERSON, District Judge.

The Fifth Amendment to the Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." A grand jury consists of up to twenty-three

be counted in determining whether the voting requirement of Rule 6(f) has been met. In response, the government asserted that sixteen of the jurors—a quorum—were sufficiently aware of the evidence because seven of the absentee jurors missed evidence that was assertedly cumulative.[1] As an alternative, the government also argued that the law does not require that there be a minimum of twelve informed jurors who vote to return an indictment.

## II. The Necessity of an Informed Grand Jury

To resolve the issues raised, the court must look to the role the grand jury plays in our criminal justice system. Chief Justice Warren, writing for the Supreme Court in *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962), eloquently described the grand jury's historic role:

> [T]his body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

(Footnote omitted.) *See also Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Others who have observed the workings of the grand jury system paint a different picture. They say that today the grand jury is a mere servant of the prosecutor and that it does not act as a buffer between the accuser and the accused. They argue that it is the prosecutor who decides which matters will be put before the grand jury, that it is the prosecutor who decides what evidence will be presented to the grand jury and thus what evidence will be ignored, and—practically and generally speaking—that it is the prosecu-

tor who makes the ultimate decision as to who should be indicted for what. *See generally* M. Frankel & F. Naftalis, *The Grand Jury* 22–23 (1977).

There is perhaps a significant gap between the grand jury's historic role and the role the grand jury now plays in our criminal justice system. Of necessity, the grand jury must rely on the evidence presented to it by the prosecutor. Nevertheless, the grand jury has an important role to play, particularly at the federal level where the grand jury is the only potentially neutral body that can protect the individual against the initiation of arbitrary or malevolent prosecutions. If such a prosecution is started, the innocent may be forced to suffer the serious economic and social harms resulting from the return of the indictment itself.

For the grand jury to fulfill its role as the independent buffer between the accuser and the accused, at least twelve grand jurors who vote to return an indictment should be informed of all the evidence submitted by the prosecutor. Jurors who are ignorant of some of the evidence presented to the grand jury cannot effectively question the validity of the prosecution's case. For example, a juror who missed all the testimony relating to count three of a particular proposed indictment obviously cannot question the validity of that proposed count. In *Wood,* Chief Justice Warren aptly spoke of "[t]he necessity to society of an independent and informed grand jury . . . ." 370 U.S. at 390, 82 S.Ct. at 1373.

The Supreme Court's decision in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), does not suggest a different result. In *Costello,* the Court held that an indictment based entirely on hearsay is valid, if returned by a legally constituted and unbiased grand jury. The Court examined the English origins of our constitutional grand jury and the history of grand jury practice in this country and noted that the grand jury has traditionally

---

1. Government counsel indicated that on the day the grand jury voted to indict, he did not examine the attendance chart and was thus unaware which jurors had missed previous sessions.

convened as a body of laymen free from technical rules of evidence. The Court approved this practice both because the grand jury was intended to operate substantially like its English progenitor and because challenges based on evidentiary defects would produce burdensome delays in criminal proceedings. Thus, *Costello* stands only for the proposition that courts should not inquire into the substance of the evidence presented to the grand jury. Courts can still play a role, however, in ensuring the fairness and independence of that body. *In re Grand Jury For November, 1974 Term,* 415 F.Supp. 242, 244 (W.D.N.Y.1976). By requiring that grand jurors be informed for their votes to count, this court is not evaluating the sufficiency of the evidence presented. Rather, it is acting to ensure that grand jury proceedings are conducted in a manner that is fair and independent.

The Second Circuit has taken the position, in *United States ex rel. McCann v. Thompson,* 144 F.2d 604 (2d Cir.), *cert. denied,* 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944), and later in *United States v. Colasurdo,* 453 F.2d 585 (2d Cir. 1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), that it is irrelevant whether the grand jurors who vote an indictment are cognizant of all the evidence, except possibly where exculpatory evidence is introduced. In *McCann,* defendants argued that the district court should have dismissed the indictment because less than twelve who voted to indict had heard all the evidence. The Second Circuit rejected this argument, stating:

> Since all the evidence adduced before a grand jury—certainly when the accused does not appear—is aimed at proving guilt, the absence of some jurors during some part of the hearing will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is

enough to satisfy them, there would seem to be no reason why they should not vote. 144 F.2d at 607. The Second Circuit further said:

> Against this [reasoning] we can think of nothing except the possibility that some of the evidence adduced by the prosecution might conceivably turn out to be favorable to the accused; and that, if the absentees had heard it, they might have refused to vote a true bill. No one can be entirely sure that this can never occur; but it appears to us so remote a chance that it should be left to those instances in which it can be made to appear that the evidence not heard was of that character
> . . . .

*Id.*

This court cannot adopt the Second Circuit's view. The Second Circuit reasoned that it is not prejudicial for an absentee to vote to indict upon hearing only some of the evidence because the missed evidence, which was also aimed at proving guilt, would not have caused him to change his vote. As the Second Circuit indicated, this reasoning does not hold true where the missed evidence is exculpatory.[2] The court, however, overlooked the fact that its reasoning also fails where the missed evidence was inculpatory but noncumulative. In such a situation, the absentee grand juror would be voting to indict without having heard evidence relating to elements of some of the crimes charged, or without having heard evidence relating to entire counts of the indictment. Clearly, it is unfair to count that grand juror's vote as one of the twelve necessary to return an indictment.

Thus, the Second Circuit's reasoning arguably holds true only where the absentee grand juror misses cumulative inculpatory evidence. Here, the government made a painstaking analysis in an attempt to demonstrate that seven of the absentee jurors

---

**2.** Since 1977, Justice Department policy requires a prosecutor "in many circumstances" to present exculpatory evidence to the grand jury. For example, if a prosecutor is personally aware of substantial evidence that directly negates the guilt of the target of the investigation, the prosecutor must present that evidence to the grand jury before seeking an indictment. *United States Attorneys' Manual,* Title 9, section 9–11.334 (August 1, 1979). Ordinarily a prosecutor should also give the target the opportunity to testify before the grand jury. *Id.* at sections 9–11.252–.253.

in fact missed only cumulative inculpatory evidence. But to allow challenges to jurors only where it can be shown that they missed exculpatory evidence, or noncumulative inculpatory evidence, would involve the courts in lengthy, burdensome analyses of the evidence presented to grand juries and would "bog down the courts in a morass, a veritable jungle of speculation and conjecture." *United States v. Colasurdo,* 453 F.2d at 596. Such analyses would constitute the kind of preliminary trials that *Costello* warned against. Therefore, it is preferable to adopt a bright line rule that requires a court to discount the vote of an uninformed grand juror. Moreover, respect for the grand jury as an institution and basic notions of justice and fair play require that the vote of a grand juror be counted only when he is informed of all the evidence presented, irrespective of whether the missed testimony was cumulative or noncumulative. It is well established that "to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1954).[3]

Having established the necessity for informed grand jurors, the court now rules that to be considered an informed juror, one must attend all sessions at which evidence is presented on the proposed indictment. This requirement cannot be met by having absentee jurors read the transcripts of missed sessions.[4] The grand jury is a creature of the Constitution, entrusted with an important and powerful role in our criminal justice system. The grand jury's role is to stand as the buffer between the accuser and the accused. It performs this role when it is asked by the prosecutor to exercise its power to bring charges against individuals for serious crimes. Having this power imposes on the grand jury the responsibility to conduct its proceedings with the highest degree of fairness. An appearance of fairness is lacking when an indictment is voted by a grand jury lacking at least twelve members who have attended all sessions. Through their attendance at every session grand jurors not only inform themselves of the evidence but also demonstrate both to those under investigation and to society their commitment to analyze and act on that evidence in a reasoned and responsible manner.[5]

3. The one decision by the Ninth Circuit that addresses the informed juror question is ambiguous. In *Lustiger v. United States,* 386 F.2d 132 (9th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968), the defendant alleged that, at each grand jury session, more than sixteen but less than all the grand jurors were present. The court held that this allegation did not provide a basis for dismissing the indictment because: "Individual grand jurors comprising more than a quorum attended all sessions, and were present when the vote was taken on the indictment." *Id.* at 139. The use of the word "individual" suggests that, in *Lustiger,* the same sixteen (or more) individual jurors attended all grand jury sessions. Thus, one could argue that *Lustiger* holds that an indictment is valid only when a quorum of the grand jury is cognizant of all the evidence at the time of voting. On the other hand, after making the above quoted statement, the Ninth Circuit cited the Second Circuit's decision in *McCann,* prefacing the citation with the signal "see." This suggests an endorsement of the Second Circuit's position. Faced with these conflicting possible interpretations of the holding in *Lustiger,* this court does not find the case controlling here.

4. Rule 6(e) of the Federal Rules of Criminal Procedure now requires that all grand jury proceedings, except for deliberations and voting, be recorded stenographically or by an electronic device. 47 U.S.L.W. 4488 (1978) (effective August 1, 1979). Though this Rule was not in effect when the grand jury heard the evidence in this case, the government nevertheless had the proceedings recorded. Even if a juror could be considered an informed juror by reading the transcripts of sessions missed, the absentee jurors here (with the possible exception of one juror) did not read the necessary transcripts.

5. The court's holding is not at odds with the Ninth Circuit's decision in *United States v. Chanen,* 549 F.2d 1306 (9th Cir.), *cert. denied* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). *Chanen* held that, in the circumstances of that case, the government could secure an indictment by reading transcripts of sworn testimony to the grand jury instead of presenting live witnesses. Cf. *United States v. Helstoski,* —— U.S. ——, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979). In *Chanen,* it appears that each grand juror was present when all the evidence was offered on the proposed indictment. The Ninth Circuit was primarily concerned that courts should not

804

It has been argued that it is unduly burdensome to require that at least twelve of the jurors who vote to indict attend all grand jury sessions. *United States ex rel. McCann v. Thompson,* 144 F.2d at 607. This court believes, on the contrary, that the government can muster grand juries and schedule its cases with sufficient ease to allow it to adjust its procedures to comply with this decision.[6] If grand jurors were told that their ability to cast a valid vote on an indictment hinges on their faithful attendance, then perhaps they would take their duties more seriously and appear at all sessions. It is not asking too much to require the faithful attendance of at least twelve out of twenty-three members of a constitutionally mandated body exercising great power over peoples' lives. To demand less casts a disparaging light on the grand jury as an institution and endorses an appearance of unfairness which has no place in our system of criminal justice.

█ Because the instant indictment was returned by less than twelve informed grand jurors—i. e., by less than twelve jurors who attended all grand jury sessions—the indictment must be dismissed. The court feels that dismissal is mandated if the Fifth Amendment's provision for indictment by a grand jury is to have any meaning.

THEREFORE, IT IS ORDERED that the indictment be dismissed without prejudice.

interfere with the standard prosecutorial decisions concerning what evidence to present to the grand jury and how to present it. By requiring that grand jurors faithfully attend all sessions at which evidence is heard for their votes to count, this court's ruling does not interfere with prosecutorial discretion. Rather, this ruling aims to ensure that grand jurors faithfully attend all sessions at which evidence is heard so that it can be said that the manner in which they arrive at their decision is fair.

6. There is no rule that limits the government in impaneling grand juries. On the contrary, F.R. Crim.P. 6(a) provides that grand juries shall be summoned "at such times as the public interest requires." F.R.Crim.P. 6(g) specifically makes the grand jury's tenure and power independent of the term of court. Thus, the government retains significant control in summoning grand juries and should be able to obtain the appropriate juror attendance.