**UNITED STATES of America, Plaintiff,**

v.

**Alex J. RAINERI, Defendant.**

**No. 80–CR–29.**

United States District Court,
W. D. Wisconsin.

Nov. 10, 1980.

Frank M. Tuerkheimer, U. S. Atty., Madison, Wis., for plaintiff.

Daniel W. Linehan and Gene D. Linehan, Linehan Law Office, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

Defendant, by counsel, has written a letter to the court dated November 5, 1980, in which he states his objection to two decisions and one recommendation made in this case by the Honorable William L. Gansner, United States Magistrate. Also, defendant requests certification of an interlocutory appeal on those issues to which he has raised objections or, alternatively, a delay . in the start of trial to permit him to exercise his right to petition for appeal.

With respect to the magistrate's decisions, the review standard to be applied is set forth in 28 U.S.C. § 636(b)(1)(A). For

pretrial matters authorized by law to be heard and determined by a magistrate, a judge may reconsider the magistrate's decision "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

Defendant has noted his objections to the magistrate's decisions (1) denying defendant's motion to move the place of trial from Madison, Wisconsin to a location near to that of the alleged crimes and (2) denying defendant's motion to sever Counts IV and V from Counts I, II, and III of the indictment. He has not marshalled any facts or legal arguments which might support a claim that the magistrate's decisions are clearly erroneous or contrary to law.

In the absence of any showing of error by defendant, I am free to disregard what I understand to be his motion for reconsideration. However, to avoid the delay which might be caused by the filing of a new motion for reconsideration, supported with legal argument, I have reviewed the magistrate's decisions on severance and on the relocation of the trial, together with the briefs of both parties on those issues. This review leaves no question about the correctness of the magistrate's decisions on both issues, or on the thoroughness with which he considered the motions and supporting or opposing arguments of both parties. There is no basis, in law or fact, for a successful challenge to his decisions, regardless of the standard of review which is applied.

■ With respect to the motion for transfer of the trial, the magistrate is correct in asserting that defendant has no legal entitlement to be tried elsewhere in the district and he is correct in his assessment of the inconvenience to the parties and to the court of holding trial in a location other than Madison.

With respect to the motion for severance, defendant has not met the burden of showing that a denial of severance would prevent him from having a fair trial. Therefore, there is no basis upon which to grant his motion for severance.

I turn next to defendant's objection to the magistrate's recommendation to deny defendant's motion to dismiss the indictment on the ground that the court's Plan for Random Selection of Grand and Petit Jurors operates to deny defendant a fair and impartial trial by a jury of his peers. Defendant objects specifically to the facts that the members of the petit jury in his trial will be drawn only from the Madison jury selection district and not from throughout the entire Western District of Wisconsin and that the petit juries in this district are rarely, if ever, selected from more than two of the five jury selection divisions which make up the Western District of Wisconsin.

■ As the magistrate noted in the Report and Recommendation entered October 28, 1980, the Sixth Amendment guarantees a trial "by an impartial jury of the state and district wherein the crime shall have been committed"; it does not impose any additional geographic restrictions on the selection of jurors. There is no requirement either that a defendant be tried only by jurors living within a close radius of the location of the crime or that he be tried only by jurors drawn from the entire judicial district in which the court sits. Defendant's arguments in this respect are meritless.

Defendant has raised no objection to the magistrate's recommendation to deny an additional dismissal motion grounded on the contention that he was indicted illegally by a grand jury whose members did not all hear all of the testimony put to the grand jury. Reviewing the magistrate's recommendation *sua sponte*, I find the recommendation legally correct and well-founded. I intend to adopt it as well as the magistrate's recommendation to deny defendant's motion grounded on the court's jury plan.

Defendant's request for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) will be denied. Section 1292(b) refers to orders entered in civil actions; it requires a finding that the order involves a controlling question of law as to which there is substantial ground for differ-

ence of opinion; and it requires the additional finding that immediate appeal would materially advance the ultimate termination of the litigation. None of the requisite factors are present here. This is a criminal action; the orders at issue do not involve controlling questions of law; the decisions made in the orders are not such that there could be said to be any ground for difference of opinion; and an immediate appeal would delay unnecessarily the ultimate termination of this litigation.

Finally, I turn to defendant's request for a delay in the start of trial, to allow time to attempt an interlocutory appeal of the matters discussed above. This request would be denied even if there were some arguable merit to defendant's objections to the decisions and recommendation of the magistrate. The request is untimely, coming twenty-eight days after the filing of the magistrate's decisions on October 10, 1980, and only two weeks prior to the scheduled start of trial.

## ORDER

IT IS ORDERED that

1. Defendant's motion for reconsideration of the decisions of the Honorable William L. Gansner, deny defendant's motions for relocation of his trial from Madison, Wisconsin and for severance of Counts IV and V from Counts I, II, and III, is DENIED on the ground that the decisions are neither clearly erroneous or contrary to law.

2. The findings of fact proposed by the magistrate in his Report and Recommendation of October 28, 1980, are adopted as the court's own findings.

3. Defendant's motion to dismiss the indictment based on the number of grand jurors concurring in the indictment is DENIED.

4. Defendant's motion to dismiss the indictment based on the operation of this court's Plan for Selection of Petit Jurors is DENIED.

5. Defendant's request for certification of an appeal pursuant to 28 U.S.C. § 1292(b) is DENIED.

6. Defendant's request for a delay in the start of trial is DENIED.

## REPORT AND RECOMMENDATION

WILLIAM L. GANSNER, Magistrate.

This report and recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). It addresses two dismissal motions not considered in my earlier report and recommendation of October 15, 1980. These motions are:

1) Defendant's motion to dismiss the indictment on the ground that there were not twelve or more grand jurors concurring in the indictment who were also present at each of the Grand Jury sessions at which evidence pertaining to this case was considered; and

2) Defendant's motion to dismiss the indictment on the ground that the court's Plan for Random Selection of Grand and Petit Jurors operates to deny defendant's right to trial by a fair and impartial jury of his peers.

Evidence relevant to these motions was introduced, and arguments of counsel presented, at a hearing before me on October 16, 1980. The sole witness testifying at that hearing was Joseph W. Skupniewitz, Clerk of this court. My proposed findings of fact relating to each motion are stated within the appropriate section of this report and recommendation.

## I. MOTION TO DISMISS BASED ON NUMBER OF GRAND JURORS CONCURRING IN INDICTMENT WHO WERE PRESENT AT ALL GRAND JURY SESSIONS

PROPOSED FINDINGS OF FACT

The following proposed findings of fact are drawn from the sources identified:

The indictment in this case was returned on June 6, 1980, with all 20 members of the Grand Jury present on that date concurring in the vote (Affidavit of Frank M. Tuerkheimer, filed July 18, 1980, at paragraph 4). The Grand Jury had considered matters relating to defendant Raineri on the follow-

ing dates, all in 1980: February 12 and 26; March 18; April 8, 9, and 29; May 20; and June 6 (Affidavit of Joseph W. Skupniewitz, filed October 6, 1980). During this period—but not for the entire period—there were as many as 23 grand jurors; there were at least 17 grand jurors present on each of the above-listed eight dates (Testimony of Joseph W. Skupniewitz at October 16, 1980 evidentiary hearing).

Seven grand jurors were in attendance on *all* eight of the dates on which matters relating to defendant Raineri were considered; each of the other grand jurors were absent on one or more of these dates (Skupniewitz Affidavit).

## OPINION

By motion filed on October 7, 1980, defendant moved for dismissal of the indictment in this action on the ground that "there were not twelve or more grand jurors concurring in the eventual issuance of the indictment in this action who were also present on each of the dates on which evidence in this matter was considered." At the conclusion of the hearing on the motion on October 16, 1980, I announced that I would recommend to the court that the motion be denied. This opinion contains the reasons for my decision, which I hereby reconfirm.

Defendant's argument in support of his motion was based entirely upon *United States v. Leverage Funding Systems*, 478 F.Supp. 799 (C.D.Cal.1979), a decision followed subsequently in the same district in *United States v. Roberts*, 481 F.Supp. 1385 (C.D.Cal.1980). In *Leverage*, the district court dismissed a 29-count indictment against four defendants on the ground that only nine of the nineteen grand jurors concurring in the indictment had attended each of the twelve sessions at which evidence pertinent to the charges had been presented. The court held that an indictment is valid under the Fifth Amendment and Rule 6(f), F.R.Cr.P., only where at least twelve grand jurors concurring in the indictment have heard all of the evidence presented to the Grand Jury. 478 F.Supp. at 800. The

court reasoned that a grand juror's vote in favor of an indictment is valid only if the grand juror is "informed," and that a grand juror cannot be so described unless he or she has heard all of the evidence presented. *Id.* at 803. Where fewer than 12 grand jurors concurring in an indictment are so "informed"—whether the evidence presented in the absence of the other jurors was cumulative or noncumulative, exculpatory or inculpatory—the district court further reasoned that a Grand Jury fails to perform its function of fairly analyzing the evidence and acting as "the buffer between the accuser and the accused." *Id.*

The district court decision in *Leverage* was recently reversed, however, in *United States v. Leverage Funding Systems*, 637 F.2d 645 (9th Cir. 1980). The issue raised by defendant in this case has been considered in only one other circuit; decisions there are directly contrary to defendant's argument. *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir.), *cert. denied*, 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944); *United States v. Colasurdo*, 453 F.2d 585 (2d Cir. 1971). Consequently, defendant can cite no viable precedent in support of his argument. The issue presented is one of first impression within this district and circuit, however, and an independent review and consideration of his claim has therefore been necessary.

There is a modest and seemingly unexceptional aspect to the argument that at least 12 of the grand jurors voting to indict should have attended all pertinent grand jury sessions. As stated by the district court in *Leverage*, it is this:

> If grand jurors were told that their ability to cast a valid vote on an indictment hinges on their faithful attendance, then perhaps they would take their duties more seriously and appear at all sessions. It is not asking too much to require the faithful attendance of at least twelve out of twenty three members of a constitutionally mandated body exercising great power over peoples' lives.

478 F.Supp. at 804. As I view the matter, however, the question is not whether it is

wise, sensible, desirable or good policy that at least 12 grand jurors have heard all of the evidence at all of the grand jury sessions leading to an indictment. The questions are, instead, whether there is substantial authority mandating the creation of such a requirement as a matter of federal law and, thereafter, justifying the imposition of the dismissal sanction for its violation.

I am persuaded, for the reasons expressed by the United States Court of Appeals for the Ninth Circuit in its opinion reversing the *Leverage* district court decision, that no substantial constitutional or statutory authority exists for either the creation of the requirement or the imposition of the sanction, and that adoption of defendant's position in this case would constitute an unjustified expansion of federal judicial supervisory power over the workings of the constitutionally-independent grand jury system.

The court of appeals' analysis of this issue in *Leverage* starts with the recognition that neither the Fifth Amendment[1] nor Rule 6, F.R.Cr.P.,[2] expressly requires that a grand juror have heard all of the evidence presented before casting a valid vote for an indictment. Read literally, the constitutional and rule provisions require only that a grand jury have consisted of 16 to 23 members, that a quorum of 16 jurors have attended each session, and that at least 12 jurors have voted to indict. *Leverage*, court of appeals at 647–48. Moreover, the fact that sixteen jurors constitute a quorum may be a reasonable basis for inferring that Rule 6 contemplates that not all of the grand jurors voting on an indictment will have heard all the evidence. *United States ex rel. McCann v. Thompson*, 144 F.2d 604, 607 (2d Cir. 1944). In any event, a holding that at least 12 of the grand jurors voting in favor of indictment must have heard all of the evidence would effect a substantial judicial amendment of Rule 6.

Defendant argues in this case, as the defendants did in the *Leverage* case, that such an expanded construction of Rule 6 is necessary in order to insure that grand jurors voting to indict be "informed" and that the grand jury properly perform its constitutional function. More specifically, it is argued that a grand juror who has not attended all sessions cannot cast a valid vote for indictment because: 1) he or she may have been absent when exculpatory evidence was presented; and 2) he or she may not have heard any evidence in support of a particular count of an indictment.

I believe that the appellate decision in *Leverage* sets forth a persuasive response to these arguments.

First, it is by no means clear that a prosecutor has a legal duty to present a grand jury with evidence that tends to negate guilt. *Leverage*, court of appeals slip opinion at 5. As a practical result, "exculpatory evidence will rarely be presented to a grand jury," and "[a] juror who is absent during a portion of the prosecution's case will, in all probability, miss only inculpatory evidence." *Id.; accord, United States ex rel McCann v. Thompson*, 144 F.2d at 607.[3] Furthermore, the grand jury's function is not to decide guilt or innocence, but rather to determine in a particular case whether probable cause exists to believe that a crime has been committed by a specific person. "A grand juror can therefore fulfill his or

---

1. The Fifth Amendment provides, in part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

2. Rule 6(a), F.R.Cr.P., provides that a "grand jury shall consist of not less than 16 nor more than 23 members." Rule 6(f) states that an "indictment may be found only upon the concurrence of 12 or more jurors."

3. Ironically, in the present case defendant has argued that the government *failed to present* exculpatory evidence to the grand jury. I have rejected this argument, however, stating that there is no basis for concluding that any clearly exculpatory evidence was either possessed by the government or withheld from the grand jury in this case. Report and Recommendation, filed October 15, 1980, at 5. Consequently, there is no basis for concluding that a grand juror absent at one or more sessions would have missed the presentation of evidence that clearly negated defendant's guilt.

her constitutional role of determining whether the prosecution has presented a prima facie case even if he or she was absent during the presentation of exculpatory evidence." *Leverage*, court of appeals at 648.

Second, the court of appeals in *Leverage* concluded that the *possibility* that a grand juror absent for one or more sessions might not hear any evidence on a particular count is not a sufficient basis for invalidating the juror's vote for an indictment. *Id.* at 648–49. The possibility of such an occurrence is undoubtedly a valid concern in a complex multiple-count case where evidence may have been presented to a grand jury over a substantial period of time. There was apparently no showing in *Leverage* of such an occurrence, however; nor has such a showing been made in the present case. I agree with the court of appeals that dismissal of a multiple-count indictment is an inappropriate remedy for the mere possibility that one or more jurors might not have heard evidence on a particular indictment count. In the absence of evidence to the contrary, a court is entitled to presume generally that grand jurors have properly discharged their heavy responsibilities, and to presume specifically that a grand juror would not cast a vote in favor of indictment on a particular count unless he or she had heard sufficient evidence to justify the charge. *Id.* at 649.

I believe it is far more appropriate for a court to exercise these presumptions than to invoke the antagonistic presumption silently employed by the district court in *Leverage; i. e.*, that where fewer than 12 of the grand jurors voting in favor of indictment have attended all sessions, one or more of those persons could not have heard sufficient evidence on a particular count. Rather than permit detailed inquiry into the sufficiency of the evidence heard by the grand jury—an inquiry which it conceded was improper under *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), *Leverage*, 478 F.Supp. at 801–802—the district court in *Leverage* opted for creation of a prophylactic requirement,

a "bright line rule" invalidating the vote of any grand juror who had failed to attend every session of the grand jury. *Id.* at 803. Like the Court of Appeals for the Ninth Circuit, I believe that to be an extravagant remedy neither mandated nor justified by the Fifth Amendment.

For these reasons, it is my recommendation that defendant's motion to dismiss the indictment on the ground that fewer than 12 of the grand jurors in this case attended all sessions of the grand jury be denied.

## II. MOTION TO DISMISS BASED ON OPERATION OF COURT'S JUROR SELECTION PLAN
### PROPOSED FINDINGS OF FACT

The following proposed findings of fact are drawn from the testimony of Joseph W. Skupniewitz at the hearing before me on October 16, 1980, from the court's Plan for Random Selection of Grand and Petit Jurors which was admitted as an exhibit at the hearing, and from judicial notice.

I take judicial notice that 28 U.S.C. § 130 divides Wisconsin into Western and Eastern districts. Section 130 does not divide the Western District of Wisconsin into divisions; instead it names Eau Claire, La Crosse, Madison, Superior, and Wausau as places for holding court.

I take further notice that under the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.*, the following is declared:

It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. Under the Act, "in judicial districts where there are no *statutory*

*divisions,*" a "division" is defined as "such counties, parishes, or similar political subdivisions surrounding the places where court is held as the district court plan shall determine: PROVIDED, That each county, parish or similar political subdivision shall be included in *some such division.*" 28 U.S.C. § 1869(e)(2) (emphasis added).

Pursuant to the Act, this district court has adopted a Plan for the Random Selection of Grand and Petit Jurors that divides the Western District into several divisions for jury selection purposes. There are five such divisions under the court's plan, each consisting of several counties. The divisions are known, respectively, as the Eau Claire, La Crosse, Madison, Superior and Wausau divisions, and correspond to the city for holding court within them.

The court's Plan identifies a procedure for selecting names of prospective jurors from source lists for each division, for maintaining a master jury wheel of prospective jurors for each division, and for maintaining separate qualified jury wheels for each division. In the case of petit juries, prospective jurors for trials to be held within a particular division will be summoned from among those persons selected from the qualified jury wheel maintained for that division. That is, for trials held within the Eau Claire division, prospective petit jurors will be selected from within that division alone; prospective jurors for trials in La Crosse will be selected from within the La Crosse division alone, and so forth for each division. In this case, where the trial is to be held in Madison, prospective petit jurors will be selected from within the Madison division exclusively. Because the Grand Jury for this district sits only in Madison, prospective grand jurors are selected at random from all the divisions.

There have been no federal trials in Superior, Wisconsin, in at least the last five years. Accordingly, no prospective petit jurors from within the Superior division have been summoned for jury duty during that period.

Federal trials in this district are routinely held only in Madison and Eau Claire, the only two places for holding court in the district where federal courtroom facilities are currently maintained. Therefore, prospective jurors are routinely summoned for petit jury service only within those two districts. Unless a trial is venued within the other three divisions of the district, prospective petit jurors will never be summoned from within those divisions.

## OPINION

As it was originally presented, defendant's motion to dismiss based on the court's Plan for selecting grand and petit jurors sought dismissal of the indictment in this case on the grounds that: 1) the selection of potential jurors from lists of actual voters operated to exclude a significant population group from jury service; and 2) the Plan's provisions for automatic and individual exemptions from jury service operated to deny defendant's right to trial by a fair and impartial jury of his peers.[4] As I construed it, however, the motion appeared to be conditioned upon such evidence, if any, of improper exclusion of potential jurors as might be revealed through defendant's motion for disclosure of all excused jurors. Decision and Order, filed October 3, 1980, at 5–6. Because the intent of his dismissal motion and the purpose of his disclosure motion were not clear, a hearing on both motions was scheduled for October 16.

At that hearing, defendant apparently abandoned his motion for disclosure of all persons excused from jury service. Moreover, based on testimony elicited from the Clerk of the Court at the hearing, defendant stated that he had substituted the following as the grounds of his dismissal motion: 1) that selection of a petit jury in this case from persons residing only in the Madison jury selection division will violate defendant's asserted constitutional right to trial by a jury drawn from throughout the Western District; and 2) that it is a violation of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.,* for petit

---

4. The motion was identified as "Defendant's Motion To Dismiss—3."

38

jurors to be routinely selected in only two of the five jury selection divisions of this district. Each ground of defendant's modified dismissal motion will be addressed separately in this opinion.

■ In denying defendant's motion for a transfer of trial to either Hurley or Superior, Wisconsin, I considered and rejected defendant's purported constitutional argument that he was entitled to a trial in, and a jury selected from within, the Superior division of this district. Decision and Order, filed October 10, 1980, at 6–9. For the reasons expressed in that decision, which need not be restated here, I am convinced that defendant's new claim of constitutional entitlement to a jury drawn from throughout this district is equally devoid of merit.

■ It is sufficient to summarize the following well-established principles: the Sixth Amendment speaks only of trial "by an impartial jury of the state and district wherein the crime shall have been committed;" the Jury Selection and Service Act of 1968 does not expand or conflict with the constitutional vicinage requirement, but only provides that petit jurors be selected from a fair cross-section of the community in either the district or division where the court will convene; in this district, the Act and the court's Plan promulgated under the Act require that a petit jury be selected from within the jury selection division where the court convenes; and in the present case that will mean that the jury for defendant's trial will be selected from within the Madison division. Nothing more is required by the Constitution or the Act. Defendant has no constitutional or statutory right to a jury drawn from throughout the district. *United States v. Florence*, 456 F.2d 46, 48–50 (4th Cir. 1972).

■ The second ground of defendant's dismissal motion is also without merit. The fact that petit jurors in this district are routinely selected in only the Eau Claire and Madison jury selection divisions is not evidence of a violation of the Jury Selection and Service Act, but rather a reflection of both compliance with the Act's provisions and the practical reality that trials have been routinely venued in only those two divisions. Under the Act and this court's Plan, petit juries must be selected from within the particular division where the court convenes. Court is routinely convened in this district only in Madison and Eau Claire. This does not mean, however, that the court cannot convene—and petit juries cannot be selected—in the other three jury selection divisions of the district. If venue in a particular case is placed at either La Crosse, Superior, or Wausau, the petit jury will be selected from the correct surrounding division in complete compliance with the letter and spirit of the Act.

The absence of federal courtroom facilities in La Crosse, Superior, and Wausau does not legally or effectively preclude the court from sitting in those cities. Defendant's motion for transfer of trial to Hurley or Superior was denied not because there are no federal courtrooms in those cities, but because the court concluded under Rule 18, F.R.Cr.P., that trial at either of those locations would not likely be more convenient to defendant and his witnesses than a trial in Madison.

For these reasons, it is my recommendation that defendant's motion to dismiss the indictment based on the operation of this court's Plan for selection of petit jurors be denied.

## RECOMMENDATION

It is respectfully recommended that this court:

1. Adopt as its own the findings of fact stated above.

2. DENY defendant's motion to dismiss the indictment based on the number of grand jurors concurring in the indictment who were present at all grand jury sessions.

3. DENY defendant's motion to dismiss the indictment based on the operation of this court's Plan for selection of petit jurors.