**UNITED STATES of America,**

v.

**Teze Renee JONES.**

**No. 87–280–Cr–T–15.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 30, 1987.

Whitney L. Schmidt, Asst. U.S. Atty., Tampa, Fla., for U.S.

Theda James, Asst. Fed. Public Defender, Tampa, Fla., Robert Weinberg, Williams & Connolly, Washington, D.C., for Jones.

## ORDER

CASTAGNA, District Judge.

The Court has for adjudication defendant Teze Renee Jones's motion to dismiss her indictment pursuant to Fed.R.Cr.P. 6(b)(2). The defendant was indicted by special grand jury 86–2–10 for knowingly and in-

tentionally distributing 5 or more grams of a substance known as "crack." As grounds to dismiss her indictment, the defendant alleges that special grand jury 86–2–10 was defective in the following respects:

(1) special grand jury 86–2–10 became slanted in favor of females through a systematic pattern of work-related excuses granted primarily to males, in violation of both the sixth amendment and the Jury Selection and Service Act, 28 U.S.C. §§ 1861–1869.

(2) special grand jury 86–2–10 ceased to exist in August 1986 when its membership fell below 16 and hence any action taken by the grand jury after that date was void.

(3) the en masse empanelment of alternate grand jurors in August 1986 was not authorized by statute or rule and consequently rendered any subsequent grand jury actions invalid.

(4) when the defendant was indicted only 11 of the original 23 grand jurors remained, thus making it impossible to indict with the concurrence of 12 or more grand jurors who had heard all the evidence.

For the reasons set forth below, the Court finds no merit in defendant's contentions and therefore denies defendant's motion.

At the outset, the Court notes that the timeliness issue was not argued at the November 23, 1987, evidentiary hearing and is considered abandoned.

Defendant's motion does not attack the selection of the grand jury venire and from the full, clear and cogent description of the selection process testified to by the Clerk of this Court, no such attack would be justified. Instead, the defendant attacks the manner and effect of the granting of work-related excuses to members of the qualified grand jury panel subsequent to its empanelment, and raises as her first contention that there has been a "systematic exclusion" of males from special grand jury 86–2–10.[1] To establish a *prima facie*

---

**1.** The defendant makes this argument under both the Sixth Amendment to the United States Constitution and Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869. The Court's

case of systematic exclusion, defendant offers, and apparently the government accepts, a modified version of the three-pronged test established for challenging the "fair cross-section of the community" requirement. *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The three prongs of the modified test are: (1) that males constitute a cognizable group in the community; (2) that the granting of work-related hardship excuses has produced a representation of males on the grand jury that is not fair and reasonable in relation to the number of males in the community; and (3) that this underrepresentation is due to "systematic exclusion" of males through the process of granting work-related excuses.

Defendant urges that she has satisfied each prong of this test and thus established a *prima facie* case. First it appears uncontested that males constitute a cognizable group in the community. To establish the second element of the modified *Duren* test, the defendant contends that there was an absolute disparity of 16% to 20.3% between the percentage of males in the venire population and the percentage of males on special grand jury 86–2–10, thus showing an unfair and unreasonable underrepresentation of males on the grand jury in relation to the number of males in the community. Finally, as to the third prong, the defendant urges that since 64.7% of all work-related excuses have been granted to males and only 35.3% to females, this underrepresentation is "systematic."

First, it is obvious that there has not been an exclusion, systematic or otherwise, of males from the grand jury panel. To exclude means to keep out, shut out, or bar from entering. This panel began with 12 males and 11 females. Defendant's claim is, therefore, that after empanelment there was a "systematic" underrepresentation of males because more males were granted work-related excuses than females. Defense counsel was unaware of the number of *requests* for such excuses made by males or females so defendant does not urge that there was any gender-based bias

analysis is equally applicable to the constitution-

in the granting of such excuses. Defendant argues instead that because more men than women were excused, the system is flawed.

■ Both 28 U.S.C. § 1861 and the Plan for the Random Selection and Utilization of Grand and Petit Jurors for the Middle District of Florida affirm the following policy statement:

"——all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."

Neither the sixth amendment nor the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869 mandate grand jury composition to mirror the percentage of men and women or any other demographic condition in the jury selection process but only, as defendant concedes, (memo page 9) that "juries be selected at random so as to represent a fair cross section of the community." Nothing in the prolix exegetic commentary of the defendant presents a factual basis to support the conclusion that the selection or excusal process was anything but random.

■ The otiose statistical analysis supplied by defendant sheds no light on the issue of randomness. If women request half as many such excuses as men, it is obvious that if all requests were valid and granted, twice as many men as women would be excused. This, however, does not amount to a "systematic exclusion" of men.

Defendant urges that "over the past 5 years, it appears from the records made available for review that virtually every one of the approximately 51 work-related hardship requests that have been considered, have been granted." Defendant then goes on to say "this violation of the Act has frustrated both of its underlying principles." In that five year period, there have been ten grand juries empaneled in this division which means that there have been an average of five total work-related excuses granted to male and female appli-

al and statutory challenge.

cants per grand jury. In this instance, however, there were 12 work-related hardship excuses granted, more than twice the average number. This shows simply that the required randomness produced a higher percentage of women than men on this particular grand jury, not that there has been any "systematic" process or pattern over the years or at any other particular time which has produced such a result.

Additionally, the defendant does not figure into her statistical analysis the number of male jurors who were employed as compared to the number and percentage of females who were employed. Without this factor in the analysis, the Court cannot determine whether employed males were in fact excluded when employed females were not.

In her brief, defendant also alleges that the empaneling court improperly granted hardship excuses to members of the special grand jury in violation of the strict excuse standards of the Jury Selection and Service Act. However, at the evidentiary hearing defendant stated that her position would be the same even assuming all requested excusals were valid and properly granted. As a result, no further inquiry into the decisions concerning excusing grand jury members is required. Nonetheless, the Court, after an independent review of each excusal request does find that they were carefully reviewed and properly granted.

■ Defendant's second and third contentions are that the grand jury ceased to exist when its membership fell below the 16 as required by Fed.R.Cr.P. 6(a) and that the en masse empanelment of alternate grand jurors violated Rule 6(g) Fed.R.Cr.P. No such reading of the rules is required, indicated or warranted. Defendant has cited no case to support her position and the Court has found none. This Court declines to adopt such a strained construction of the rules when it is not apparent that such effect was intended. As to Rule 6(a), it would mean that if the panel were reduced to 16 no further excuse could be granted regardless of the emergency nature of the request unless additional grand jurors were first empaneled, at the risk of dissolving the entire grand jury. As to Rule 6(g), there is simply no reason to construe that language as to "require" replacement of an excused juror on a one-for-one basis when the language reads that the court "may" empanel another person in place of the juror excused. If the act of replacement itself is not required why should the time of replacement be circumscribed without clear language so providing? In any event, no substantial violation of the rules or the Act has been established. *See United States v. Evans,* 526 F.2d 701, 703 (5th Cir.1976), *United States v. Gregory,* 730 F.2d 692, 699 (11th Cir.1984) *cert. denied* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

Defendant's final argument is that since only 11 of the original 23 grand jurors remained when defendant was indicted, it was impossible to indict with the concurrence of 12 grand jurors who had heard all the evidence. This argument has been considered by several circuit courts and has been roundly rejected. *See United States v. Lang,* 644 F.2d 1232 (7th Cir.1981), *United States ex rel. McCann v. Thompson,* 144 F.2d 604 (2d Cir.1944), *cert. denied,* 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944). Notwithstanding the abundant case law which rejects defendant's position, defendant's argument completely crumbles when it is revealed that all the evidence for and against her was presented to the grand jury on September 17, 1987, and thus all 12 (or more) grand jurors who voted to indict did, in fact, hear *all* the evidence for and against her.

Based on the foregoing, it is

ORDERED:

1. That defendant Teze Renee Jone's motion to dismiss indictment pursuant to Rule 6(b)(2) Fed.R.Cr.P. is denied.