**UNITED STATES of America**

v.

**Arthur F. FURMAN, D.D.S.**

**Crim. No. Y–80–0432.**

United States District Court,
D. Maryland.

Feb. 12, 1981.

Russell T. Baker, Jr., U. S. Atty., D. Christopher Ohly, and Stuart O. Simms, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

David R. Addis, Washington, D. C., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This case is before the Court for resolution of two Motions to Dismiss filed on behalf of the defendant, Dr. Arthur F. Furman who has been charged with eleven counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. The gravaman of the indictment is that the defendant, a Doctor of Dental Surgery, advised certain of his patients to undergo substantial dental treatment, suggested that these patients permit him to file insurance claims asserting that the treatment was rendered as a result of accidental injuries suffered by the patients, and proceeded to submit (and collect) fraudulent insurance claims. After careful consideration of the legal arguments advanced by the parties both in written form and at oral arguments, this Court finds that Defendant's Motion to Dismiss on the Grounds of Prosecutional Misconduct is without merit, but that the facts underlying

Defendant's Motion to Dismiss on the Ground that an Unauthorized Person Participated in the Grand Jury Proceedings mandates a dismissal of the indictment without prejudice. These two Motions will be discussed in turn.

*I. Defendant's Motion to Dismiss on the Grounds of Prosecutorial Misconduct.*

*A. Legal Background of Prosecutorial Misconduct Doctrine*

It has long been established that the courts are extremely reluctant to examine the evidentiary bases of grand jury indictments. This reluctance is generally attributable to language taken from the seminal case of *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), wherein the Supreme Court stated that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . . if valid on its face, is enough to call for trial of the charge on the merits." Id. at 363 (indictment based exclusively on hearsay evidence found sufficient). As a result of *Costello* and its progeny, most federal courts have refused to dismiss indictments when a challenge to that indictment is viewed as going primarily to the quality or sufficiency of the evidence. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (the validity of an indictment is not affected by the character of the evidence considered).

Nevertheless, the federal courts have naturally felt compelled to remedy some prosecutorial abuses of the grand jury system. In order to do so, without ignoring *Costello's* prohibition against examining directly the quality of the evidence presented to the grand jury, the courts have invoked the "prosecutorial misconduct" doctrine. *See United States v. Lawson,* 502 F.Supp. 158, 172 (D.Md.1980). This doctrine, evolved from the *Costello* mandate that an indictment be returned by a "legally constituted and unbiased grand jury," has not been given consistent treatment by the courts, but is generally applied where the evidence indicates "entrenched and flagrant" prosecutorial conduct, or conduct "more than an isolated incident unmotivated by sinister ends." *United States v. Serubo,* 604 F.2d 804 (3rd Cir. 1979). Upon review of the cases cited by both parties to the instant matter, it is evident that the government's conduct did not rise to such a level as to warrant a dismissal of the Furman grand jury indictment on the grounds of prosecutorial misconduct.[1]

*B. The Doctrine as Applied to the Specific Facts*

Defendant cites three examples of prosecutorial conduct while urging that the present indictment be dismissed. Furman's first contention is that the government prosecutors failed to present certain exculpatory evidence to the grand jury. In 1979, Dr. Furman had filed suit in Prince George's County court against two former employees, alleging breach of employment contract as well as breach of certain restrictive covenants. At trial on these charges, the defendant employees made allegations concerning Dr. Furman's purported scheme of insurance fraud. Furman appeared as a witness at this trial and denied all allegations. Defendant contends that the transcript of his testimony given at this Prince George's County trial should have been offered into evidence at the grand jury proceedings, on the grounds that such testimony was relevant and tended to exculpate him of the mail fraud charges.

In *United States v. Mandel,* 415 F.Supp. 1033, 1040 (D.Md.1976), *conviction reversed on other grounds,* 591 F.2d 1347 (1979), the court discussed in great detail the duty of a prosecutor to disclose exculpatory evidence to a sitting grand jury. As stated in the *Mandel* opinion, "[o]nly in a case in which the evidence *clearly would have negated guilt or undermined the au-*

---

1. As a threshold matter, there is much controversy over the issue whether *actual prejudice* must be shown before an indictment can be dismissed under the doctrine of prosecutorial misconduct. Given that this Court concludes that the evidence in this case fails to establish prosecutorial misconduct, it need not address the prejudice issue.

*thority of the grand jury to act at all* should a court act . . ." to dismiss an indictment. *Id.* (emphasis supplied). *Accord United States v. Olin Corp.*, 465 F.Supp. 1120 (W.D. N.Y.1979). The *Mandel* court went on to state that a prosecutor is not obliged to sift through all of the available evidence to find statements or documents that might be exculpatory. *Id.* Nor is a prosecutor required to present the defendant's version of the facts to the grand jury. *Id.* While a few courts seem to require a more searching revelation of evidence tending to exculpate, *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill., E.Div. 1979), the more prevalent view is in accord with the *Mandel* teachings. *See United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979) (prosecutor must reveal only substantial evidence negating guilt). Given that a grand jury proceeding is "not an adversary proceeding in which the guilt or innocence of the accused is adjudicated," *United States v. Calandra, supra*, the *Mandel* view is the proper one.

 With this analysis as background, it is manifest that the prosecutors were not required to provide the grand jury with the transcript of the defendant's prior testimony. For one thing, such testimony would certainly not have "clearly negated guilt;" at most it would have merely recited defendant's version of the facts in a manner not required by *Mandel*. Equally important, the evidence is clear that on two or three occasions, the government's attorney invited the defendant to appear and testify before the indicting grand jury. On each occasion he declined this invitation, and on no occasion did he request that the prior transcript be read into the record. As in the *Mandel* case, where the defendant was given the opportunity to present the government with a list of exculpatory witnesses but chose not to do so, "[t]he fact that the government gave the defendant that opportunity is an important factor in determining whether the government failed to present exculpatory information before the grand jury." *Id.* at 1040. For these

reasons, this Court concludes that the government was not required to present to the grand jury copies of Furman's Prince George's County transcripts. Defendant's requested relief as to this issue will be denied.

 Furman's second contention is that the government presented the grand jury with a transcript of the prior testimony of Dr. Steven Miller, testimony which tended to exculpate Dr. Furman, when the government should have instead presented the grand jury with Dr. Miller's *live* testimony. Defendant's contention here seems to be that the use of a transcript rather than live testimony is inherently intended to suppress exculpatory evidence. However, as noted by Judge Harvey in an oral ruling in *United States v. Swisher*, No. H–79–0130 (D.Md. July 25, 1979), "there is little logical connection between the use of transcript testimony and the suppression of exculpatory evidence." Transcript, p. 18. Furthermore, it is clear that Dr. Miller's *live* testimony was not required.[2] The law is well settled that the use of transcript testimony before a grand jury is permissible. *See, e. g., United States v. Malatesta*, 583 F.2d 748 (5th Cir. 1978). To require that a prosecutor present live testimony instead of transcript testimony, in these circumstances, would amount to a full-scaled attack on the *quality* of the evidence presented to this grand jury, an inquiry which has been foreclosed from the courts by the *Costello* and *Calandra* decisions. Finally, the sole case offered by the defendant to support his charge is clearly distinguishable on its facts. In *United States v. Samango*, 607 F.2d 877 (9th Cir. 1979), the Ninth Circuit dismissed an indictment on the grounds, *inter alia*, that the government should have presented the live testimony of a certain witness rather than submit that witness' prior testimony by way of transcript. However, in *Samango*, the credibility of that particular witness was directly at issue. The witness had, in his prior testimony, testified against the accused, but had

---

**2.** Whether or not the government was required to present Dr. Miller's testimony to the grand jury at all, in any form, is an issue not before this Court.

subsequently (with the knowledge of the government) changed his testimony in a manner which tended to exculpate the defendant. Rather than presenting this witness before the grand jury live, where this exculpatory testimony would have been revealed, the government chose to offer the prior (and tainted) transcript testimony instead. On these facts, the Ninth Circuit found prosecutorial misconduct. In the instant case, there is no evidence that Dr. Miller's credibility is at issue,[3] nor is there any evidence which indicates that the government knowingly presented tainted evidence to the grand jury. Accordingly, defendant's second claim must be denied.

Furman's third, and final, claim is that the prosecutor improperly badgered, harassed, and abused a grand jury witness who had offered testimony exculpatory of the defendant. The allegation, in simple terms, is that the attorney improperly called grand jury witness Helen Myers a perjurer, in the presence of the grand jury, when she offered testimony favorable to Furman. Defendant contends that such conduct was calculated to discredit the testimony of a witness favorable to the accused, so that the grand jury would return an immediate indictment against Furman without regard to any exculpatory evidence that may have been offered. In such circumstances, defendant contends that the impartiality of the grand jury process was impugned, and that the resulting indictment must consequently be dismissed.

 This allegation is a matter of not inconsiderable concern. While it is not true, on the facts, that the prosecutor "yelled" at the witness in the presence of the grand jury, it is true that he repeatedly informed the witness that, in the government's view, perjury had been committed. This Court, upon review of the grand jury transcripts, questions if it was necessary for the prosecutor to carry out his colloquy with Ms. Myers at such length. Nevertheless, an indictment should not be dismissed on the basis of alleged prosecutorial misconduct where, as here, only an "isolated inci-

dent unmotivated by sinister ends" is shown. *United States v. Serubo, supra,* (indictment dismissed where one *of many* examples of proven governmental misconduct was fact that prosecutor accused *various* witnesses of perjury). For this reason, defendant's final contention must be denied.

## II. Defendant's Motion to Dismiss on the Ground that an Unauthorized Person Participated in the Grand Jury Proceedings.

The facts underlying this separate Motion are simply stated. On June 9, 1980, Judge Murray of this Court signed an Order dismissing one Lynne Reed from service on the grand jury which ultimately indicted Dr. Furman. Ms. Reed, until this time, had been faithfully serving on that grand jury despite considerable personal hardship for one year. On June 12, 1980, this grand jury convened for its regular Thursday session and heard testimony from a number of witnesses. One of those supposed grand jurors who participated in the June 12 proceedings was Lynne Reed. For reasons unbeknownst to anyone, neither Ms. Reed nor the government were aware that she had been excused from grand jury service three days earlier. Without her presence on June 12, the grand jury would not have had a 16 person quorum. On June 13, 1980, the government and Ms. Reed received notice of Judge Murray's June 9 Order, and she discontinued her grand jury service thereafter. The prosecutor filed an ex parte affidavit with this Court explaining the circumstances surrounding the June 12, 1980 grand jury session, and inadvertently mailed a copy of that affidavit to Dr. Furman's counsel. The propriety of this *ex parte* communication is not before this Court. The instant Motion to Dismiss was filed on January 19, 1981.

Defendant seeks a dismissal of the Furman indictment on the asserted authority of Rule 6(d) of the F.R.Crim.P., and cases interpreting that provision. Rule 6(d) reads:

---

**3.** At least in any respect adverse to the defendant.

Attorneys for the government, the witnesses under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present when the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

The purposes underlying Rule 6(d), as often explained by the Courts, are those of "safeguarding the secrecy and privacy of the grand jury proceedings and of protecting the grand jurors from the possibility of undue influence or intimidation from unauthorized persons." *See, e. g., United States v. Echols*, 542 F.2d 948, 951 (5th Cir. 1976). Where the courts have found that an unauthorized person invaded the sanctity of the grand jury proceedings, however, they have *per se* dismissed any resulting indictments without requiring a showing of breach of secrecy, intimidation, or other prejudice to the defendant. *See Latham v. United States*, 226 F. 420 (5th Cir. 1915) (stenographer, not permitted in grand jury room under then-existing rules, was unauthorized person requiring dismissal of indictment); *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D.Tex.1977) (CAB official present as an "observer" required dismissal); *United States v. Daneals*, 370 F.Supp. 1289 (W.D.N.Y.1974) (regional counsel for Selective Service present during testimony required dismissal). *But see United States v. Rath*, 406 F.2d 757 (6th Cir. 1969) (attorney, stranger to the grand jury action who inadvertently walked into courtroom interrupting grand jury proceedings for 15–20 seconds, was technically a 6(d) violation but dismissal *not* required).

In determining whether a given person who appears in the grand jury room is "unauthorized," the Courts have traditionally looked to the specific language of Rule 6(d) to determine if that person falls within any of the permissible categories of persons whose presence before the grand jury is allowed. For example, in *United States v.*

*Echols, supra,* the Court was asked to decide whether a projectionist, duly sworn as a witness, was an "unauthorized" person who impermissibly appeared before the grand jury. The Court held that he was not unauthorized, finding him to be a "witness under examination" as provided for in Rule 6(d). Similarly, in *United States v. DiGirlomo*, 393 F.Supp. 997 (W.D.Mo.1975), attorneys assigned to the Kansas City Field Office of the Justice Department's Organized Crime and Racketeering Section were found to be "attorneys for the government" as envisioned by Rule 6(d). In the instant case, this Court's first step will be to determine whether the disqualified juror falls within any of the "permissible categories" spelled out in Rule 6(d).

To do so, this Court first holds that "jurors" are such a permissible category, even though Rule 6(d) might be interpreted as not expressly so stating. Next, this Court must decide whether a *disqualified* juror is nonetheless a "juror" within the implicit meaning of 6(d). On this point, the government cites *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir. 1944), decided by Judge Learned Hand. In *Thompson*, the Court was required to determine whether the presence of disqualified jurors [4] during certain grand jury proceedings mandated a dismissal of the resulting indictment. The defendant had argued, although apparently without much conviction, that "the mere presence of the disqualified jurors vitiated the indictment." Judge Hand would have none of that. Rejecting defendant's contention summarily, the Court announced that "a disqualified juror is still a juror, [and] not an interloper." The government, based almost entirely on *Thompson*, argues that the Furman indictment should remain intact for this very same reason.

With due respect to Judge Hand, and to the government's interpretation of the *Thompson* opinion, this Court is convinced

---

4. In *Thompson*, the jurors in question voluntarily disqualified themselves due to asserted conflicts. In the instant case, of course, Ms. Reed had been disqualified as a matter of law by virtue of Judge Murray's Order of June 9.

that the "interloper" statement is not an accurate reflection of current law.[5] The position, first of all, raises troublesome practical problems. If Judge Hand is to be taken literally, he would appear to be sanctioning the presence in any grand jury proceeding of grand jurors who had been legally disqualified from service, regardless of the reason[s] for the disqualification. Taken to its extreme, the Hand-government reasoning would immunize an indictment handed down by a grand jury in which, during the actual presentation of testimony, a former grand juror disqualified for threatening other grand jurors was present. Such a result surely flies in the face of logic and reason, as well as Rule 6(d), but it seems to be the result to which the "interloper" analysis leads. Second, even conceding that the Hand statement should not be stretched to its ultimate limits, the government has been foreclosed from requesting a rule demarcating situations in which an indictment need *not* be dismissed despite an unauthorized presence. As the very fact of the adoption of a *per se* rule makes clear, "Rule 6(d) and the cases construing it lay down a *hard and fast rule which allow for no exceptions,*" regardless of the purported justification for the unauthorized presence. *United States v. Bowdach,* 324 F.Supp. 123, 124 (S.D.Fla.1971) (emphasis supplied). The courts have concluded that such factors as actual prejudice or causation have no place in the determination of whether to dismiss an indictment due to the presence of an unauthorized "interloper," in order to shield our grand jury system from every taint or appearance of impropriety no matter how slight. The *per se* rule plays an important role in the preservation of our grand jury system as one of accusation and not of inquisition, and will be faithfully followed here.

■ Accordingly, for the reasons above stated, it is the opinion of this Court that a

disqualified juror does not fall within one of the "permissible categories" of persons permitted to attend grand jury proceedings. As such, the Furman indictment must be dismissed. An appropriate Order will be entered dismissing the Furman indictment in its entirety, without prejudice. *United States v. Daneals, supra.*

---

5. *Thompson,* to be sure, has been oft-cited over the past thirty-odd years. However, that opinion stands for an entirely different principle (*i. e.,* that grand jurors who vote on indictments need not be present during the entirety of the grand jury testimony) than that urged by the

government here. Indeed, so far as this Court is aware, *Thompson* has never been cited with approval for the proposition which the government now suggests. This Court has every intention of keeping that unbroken string intact.